The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Robert J. **FREEMAN**, Defendant–Appellant.

No. 99CA2152.

Colorado Court of Appeals, Div. III.

Dec. 20, 2001.

Certiorari Denied June 3, 2002.

Ken Salazar, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Michael P. Zwiebel, Greeley, CO, for Defendant–Appellant.

Opinion by Judge NIETO.

Defendant, Robert J. Freeman, appeals the judgment of conviction entered upon jury verdicts finding him guilty of one count of attempted first degree murder, two counts of attempted second degree murder, and one count of conspiracy to commit first degree murder. We affirm.

Defendant attempted to murder his stepdaughter and her boyfriend by placing a pipe bomb under their car. Defendant attempted to activate the bomb by remote control, but it only partially detonated. The stepdaughter then got out of the car, and defendant shot her twice as she was running away. Defendant was arrested at the scene.

Defendant pled not guilty by reason of insanity. A unitary jury trial was held pursuant to § 16–8–105.5, C.R.S.2001, and defendant was convicted of all charges.

I.

Defendant contends that his right against self-incrimination was violated when the trial court admitted statements he made during a court-ordered sanity examination without giving the jury an instruction limiting their use of the statements. We disagree.

After defendant entered his plea of not guilty by reason of insanity, the trial court ordered that defendant be examined by a psychiatrist. The psychiatrist concluded that defendant was sane at the time the crimes were committed. The psychiatrist testified at the unitary trial concerning incriminating statements defendant made during the mental examination.

Holding a single trial on both insanity and guilt does not violate a defendant's right against self-incrimination. Similarly, the privilege against compulsory self-incrimination is not violated when psychiatrists who have examined a defendant testify regarding the defendant's statements to them. The unitary trial statutes include provisions to protect a defendant's right against self-incrimination. *People v. Bielecki,* 964 P.2d 598 (Colo.App.1998).

Section 16–8–106(2)(b), C.R.S.2001, provides that a defendant shall have a privilege against self-incrimination during an examination to determine sanity. Moreover, § 16–8–107(1.5)(a), C.R.S.2001, provides in pertinent part that:

> evidence acquired directly or indirectly for the first time from a communication derived from the defendant's mental processes during the course of a court-ordered examination ... is admissible only as to the issues raised by the defendant's plea of not guilty by reason of insanity, and the jury, *at the request of either party,* shall be so instructed. (emphasis added)

Before trial, defendant filed a motion to declare § 16–8–101, et seq., C.R.S.2001, unconstitutional and to preserve his constitutional rights. In his motion, defendant asserted that, as a part of its duty to advise him of the consequences of pleading not guilty by reason of insanity, the trial court was required to advise him: (1) what procedures would be adopted to ensure that no evidence acquired by the prosecution for the first time during the mental examination would be used against defendant except for the limited purpose allowed under § 16–8–107(1), C.R.S.2001; and (2) what limiting instruction would be given to the jury pursuant to § 16–8–107(1.5)(a).

Defendant argues that his pretrial motion constituted a request for an instruction limiting the use of his statements made

during the mental examination. He asserts that the court's failure to give such an instruction constitutes reversible error. We reject this argument.

Defendant's motion, filed almost two years before trial, requested that the trial court advise him of the consequences of pleading not guilty by reason of insanity so that he could intelligently decide whether to persist in that plea. Defendant's motion was not a request for the trial court to give a limiting instruction, but rather a request for clarification of what instruction the court might give pursuant to § 16–8–107(1.5)(a).

When the evidence was actually presented to the jury at trial and when the issue of how to instruct the jury was raised, defendant did not request an instruction pursuant to § 16–8–107(1.5)(a). Prior to voir dire, the trial court asked the parties to tender any instructions relating to insanity, and defendant did not request a limiting instruction. Also, defendant did not tender or request a limiting instruction when the psychiatrist testified at trial, nor did he request an instruction during the discussion of jury instructions after both parties rested.

Section 16–8–107(1.5)(a) only requires a limiting instruction "at the request of either party." If the General Assembly had intended to require a limiting instruction in every case, it would have used mandatory language. See § 16–10–301(4)(d), C.R.S.2001 ("[t]he trial court shall" instruct the jury on the limited purpose of similar transaction evidence in cases involving unlawful sexual behavior); § 13–25–129(2), C.R.S.2001 ("the court shall instruct the jury" to determine the weight and credibility of child hearsay evidence).

■ Because defendant did not request a limiting instruction, the trial court did not err in failing to give such an instruction. Cf. Rowan v. People, 93 Colo. 473, 26 P.2d 1066 (1933)(failure to give sua sponte cautionary instruction regarding evidence displayed to the jury but not admitted was not error); People v. Dillon, 633 P.2d 504 (Colo.App.1981)(failure to give sua sponte cautionary instruction regarding accomplice testimony was not error).

Accordingly, we conclude that defendant's right against self-incrimination was not violated.

## II.

■ Defendant next contends that the trial court erred in denying his motion to suppress and in allowing evidence of statements he made to a fellow inmate. Specifically, defendant argues that his Sixth Amendment right to counsel was violated because the inmate was a police informant. We are not persuaded.

■ When ruling on a motion to suppress, a trial court must both make findings regarding the historical facts of the case and apply the controlling legal standard to the established facts. A court's findings of fact are entitled to deference and will not be overturned if supported by competent evidence in the record. However, if no controlling facts are in dispute, an appellate court may review the issue de novo because the legal effect of established facts is a question of law. People v. King, 16 P.3d 807 (Colo. 2001).

■ After formal criminal proceedings begin, the prosecution is prohibited from deliberately eliciting statements from the defendant without an express waiver of the right to counsel. Michigan v. Harvey, 494 U.S. 344, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990). In United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), the Supreme Court noted three important factors in determining whether the prosecution deliberately elicited incriminating statements from the defendant by the use of a secret government agent: (1) that the informant was acting as a paid informant for the government; (2) that the informant was ostensibly no more than a fellow inmate of the defendant; and (3) that the defendant was in custody and charged with a crime. See also People v. Wieghard, 727 P.2d 383 (Colo.App. 1986).

■ Whether a person is an agent of the police is determined by the totality of the circumstances. It is the defendant's burden to prove that a person was acting as an agent

of the police. *People in Interest of P.E.A.*, 754 P.2d 382 (Colo.1988).

The record reveals that an inmate approached a police officer at the detention center. He told the officer that he wished to speak with her about defendant, who was also being detained there. A detective assigned to defendant's case was then contacted and met with the inmate. The detective testified at a motions hearing that he sought and received assurances from the inmate that he was providing the information on his own accord and that the inmate understood he would not receive, nor should he expect to receive, anything in return for providing information. He also testified that similar meetings took place on four other occasions and that similar assurances were obtained from the inmate on each occasion. He further stated that he did not ask the inmate to gather information about defendant.

The officer initially contacted by the inmate was present at each of the meetings with the inmate. She testified that neither she nor anyone else ever indicated to the inmate that they wanted him to obtain information for the police. The inmate also testified at the hearing that he was never asked to obtain or provide information about defendant and that he never received anything in return for providing such information.

In denying defendant's motion to suppress his statements to the inmate, the trial court found there was no attempt by the police to "initiate, induce, coerce, dominate, or direct" the inmate's activities in gathering information about defendant. These findings are supported by the record and will not be disturbed on appeal. Thus, the critical factor, that the inmate was acting as a paid informant for the police, was not established, and the trial court correctly denied the motion to suppress.

■ Defendant argues that it must have been obvious to the police that the inmate was engaged in an ongoing effort to elicit incriminating information from defendant because the inmate contacted the police on several occasions, each time with more information. However, there is no evidence that the police encouraged or instructed the inmate at any time or that he received any-

thing in return for providing information regarding defendant. The police have no duty to stop an inmate, who is acting independently, from providing information about a fellow inmate. *Dufour v. State*, 495 So.2d 154 (Fla. 1986).

Accordingly, we conclude that defendant's right to counsel was not violated.

## III.

Defendant next contends that the trial court erred in admitting certain statements he made to a detective, because he had not been re-advised of his rights and was not sufficiently aware of those rights when the statements were made. We disagree.

■ Before a police officer may interrogate a person who is in custody, he or she must advise the person of certain rights, and the person must knowingly and voluntarily waive those rights before speaking with the officer. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The validity of a waiver of *Miranda* rights is determined by consideration of the totality of circumstances surrounding the statement. Repeated warnings are not required in order to find that an accused validly waived his privilege against self-incrimination and his right to counsel. *People v. Chase*, 719 P.2d 718 (Colo.1986).

■ There are several factors to consider in resolving the validity of a waiver: the lapse of time between the initial advisement and the subsequent interrogation; the extent to which a suspect has been informed or is aware of the subject matter of the interrogation prior to its commencement; whether the accused or the interrogating officer initiated the interview; whether and to what extent the accused was reminded of his or her rights prior to the interrogation; the clarity and form of the defendant's acknowledgement and waiver, if any; and the background and experience of the accused with the criminal justice system. No single factor is determinative; each is important and should be appropriately considered. *People v. Chase, supra.*

Where an initial *Miranda* advisement and waiver is followed by a later interrogation not preceded by another *Miranda* advisement, the ultimate question is whether, considering the totality of circumstances, the defendant was sufficiently aware of the continuing nature of his or her constitutional rights so as to render any subsequent statement the result of a knowing, intelligent, and voluntary waiver of those rights. *People v. Chase, supra.*

A detective interviewed the defendant on the morning he was arrested. Defendant was properly advised of his rights before the interview, waived his rights, and voluntarily talked to this detective. Approximately five hours later, another detective contacted defendant to obtain handwriting samples. This detective mentioned that defendant's wife had been located and that Bureau of Alcohol, Tobacco, and Firearms (ATF) agents were going to speak with her. Defendant then stated that his wife was not involved in the case and that he had done everything himself. This detective proceeded to interrogate defendant, without again advising him of his rights, and the statements made to this detective are at issue here.

Approximately one hour after the second interview, ATF agents contacted defendant. They advised defendant of his rights, obtained a written waiver of rights, and interviewed him.

Here, the trial court's conclusion that defendant understood and waived his *Miranda* rights during the second interrogation is supported by the record. The interrogation in question took place within a few hours after defendant's initial advisement and waiver of rights. Defendant does not dispute that he understood and waived his rights during the first interrogation. He was aware of the subject matter of the second interrogation, because it involved the same charges for which he was arrested and questioned about earlier that day. Within an hour after the interrogation in question, defendant again waived his rights after an advisement and spoke with ATF agents, thus showing his continued willingness to speak with the police.

This evidence supports the trial court's conclusion that defendant was aware of and voluntarily waived his rights before making the statements in question. *See People v. Hopkins,* 774 P.2d 849 (Colo.1989)(waiver of *Miranda* rights need not be express, but may be inferred from the actions and words of the person interrogated).

Thus, we conclude the trial court properly admitted the statements in question.

## IV.

Finally, defendant contends that a mistrial should have been granted because his stepdaughter's testimony that he had previously threatened to hit her constituted evidence of a prior bad act inadmissible under CRE 404(b) and because her testimony that he liked to gamble and read about witchcraft was irrelevant. We are not persuaded.

A trial court's evidentiary rulings will not be disturbed on appeal absent an abuse of discretion. In addition, where a trial court abuses its discretion in admitting evidence, the error does not require reversal if it was harmless, meaning that the error did not substantially influence the verdict or affect the fairness of the trial proceedings. *People v. Dore,* 997 P.2d 1214 (Colo.App. 1999).

A mistrial is a drastic remedy that is warranted only when the prejudice to the accused is so substantial that its effect on the jury cannot be remedied by other means. A trial court's denial of a motion for a mistrial will not be disturbed on appeal absent an abuse of discretion. *People v. Dore, supra.*

## A.

Defendant argues the testimony that he had previously threatened to hit his stepdaughter constituted evidence of a prior bad act and was inadmissible under CRE 404(b). Defendant objected to the testimony and argued that it required a mistrial. The trial court denied the motion for mistrial but acknowledged that the evidence should have been addressed in a pretrial motion. Defendant did not, at that time, request that the

trial court give a curative instruction or limit the use of the testimony in any way.

The testimony was not offered as evidence of defendant's bad character, but rather as evidence of the relationship between defendant and his stepdaughter. She testified that during incidents she described as "scream fests" defendant "would be screaming just as much as my mother. The only thing is when I would scream back, he would threaten to hit me, tell me to shut up, if I didn't stop screaming."

The jury had already heard testimony that defendant had threatened to kill his stepdaughter. Under the circumstance here, the trial court's decision to deny defendant's motion for a mistrial was not an abuse of discretion.

#### B.

 Defendant also argues that the trial court erred in allowing the stepdaughter to testify that defendant gambled and read about witchcraft because it was not relevant under CRE 404(a)(1). However, the trial court allowed the testimony as rebuttal for an anticipated attack on the credibility of the inmate referred to in part II above.

The prosecution explained that it wanted to elicit such testimony from the stepdaughter at that time rather than recall her as a witness after the inmate testified, because she had difficulty testifying due to her troubled emotional state. The inmate later testified as anticipated by the prosecution, and, as anticipated, defendant vigorously attacked his credibility, even referring to him as a "professional liar."

The stepdaughter's testimony corroborated similar evidence from the inmate. The inmate kept written notes of his conversations with the defendant that contained many details, including defendant's statements that he gambled and read about witchcraft. The notes were admitted into evidence without objection. Therefore, the testimony was relevant to bolster the inmate's credibility and

the trial court did not err by overruling the objection.

 The order of proof and the sequence of witnesses is within the discretion of the trial court. *Schlesselman v. Gouge*, 163 Colo. 312, 431 P.2d 35 (1967). We conclude that the trial court did not abuse its discretion in allowing the stepdaughter's rebuttal testimony prior to the inmate's testimony.

The judgment is affirmed.

Judge ROTHENBERG and Justice KIRSHBAUM concur.*