The PEOPLE of the State of Colorado, Plaintiff–Appellant and Cross–Appellee,

v.

Nathan Jerard DUNLAP, Defendant–Appellee and Cross–Appellant.

No. 01CA1082.

Colorado Court of Appeals, Div. I.

Sept. 9, 2004.

As Modified on Denial of Rehearing Dec. 23, 2004.

Certiorari Denied Nov. 7, 2005.*

* Justice MARTINEZ and Justice BENDER would grant as to the following issue:

Whether the court of appeals erred by approving the admission of evidence obtained without Miranda advisement.

Ken Salazar, Attorney General, Clemmie Parker Engle, Assistant Attorney General, Paul E. Koehler, Assistant Attorney General, Denver, Colorado; James J. Peters, District Attorney, Eva E. Wilson, Deputy District Attorney, Centennial, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Philip A. Cherner, Denver, Colorado; Michael Heher, Captain Cook, Hawaii, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge MARQUEZ.

The People appeal the order granting partial relief to defendant, Nathan Jerard Dunlap, on his Crim. P. 35(c) motion. By cross-appeal, defendant challenges the partial denial of his motion. We reverse the order to the extent it vacated the sentences for second degree kidnapping and remand for correction of the mittimus to reflect reinstatement of the original convictions and sentences. We otherwise affirm.

Table of Contents

Facts and Procedural History

The People's Appeal

I. Jury Instructions

Defendant's Appeal

II. Ineffective Assistance of Counsel

III. Deputy District Attorney's Testimony

IV. Information

V. Suppression of Statements and Evidence

VI. Polygraph Issues

VII. *Curtis* Advisement

VIII. Closing Argument

IX. Jury Instructions

X. Right of Defendant and Counsel to be Present at Trial

XI. Sufficiency of the Evidence

XII. *Apprendi* Sentencing Issues

(This Table of Contents and the section headings throughout this opinion are offered solely for the convenience of the reader and do not control or modify the substance of each section.)

Facts and Procedural History

In 1993, a Burger King restaurant was robbed while the assistant manager, a manager trainee, and a crew member were working there. The following month, defendant was arrested for an unrelated quadruple murder at the Chuck E Cheese restaurant in Aurora.

In 1995, while he was in custody on the murder charges, defendant was charged with the crimes at issue here relating to the Burger King robbery. A jury found defendant guilty of two counts of second degree kidnapping, one count of aggravated robbery, and one count of theft at the Burger King restaurant. One second degree kidnapping count was enhanced to a class two felony because the victim, the manager trainee, was also the victim of a robbery; the other kidnapping count, concerning the crew member, was enhanced to a class three felony because a deadly weapon was used.

Defendant was sentenced to consecutive terms of twenty and thirty-five years for second degree kidnapping and twenty years for aggravated robbery, and a concurrent six-year term for theft. A division of this court affirmed defendant's conviction and sentence. *People v. Dunlap*, (Colo.App. No. 96CA0329, Feb. 5, 1998)(not published pursuant to C.A.R. 35(f)). The Colorado Supreme

Court denied defendant's petition for certiorari review.

After holding a hearing on defendant's Crim. P. 35(c) motion, the trial court vacated the sentences for the two second degree kidnapping counts and ordered that defendant be resentenced on those counts only. The court denied the remainder of defendant's motion. Both of defendant's second degree kidnapping convictions were later reduced to class four felonies, and defendant was sentenced to consecutive ten-year terms on those counts.

### The People's Appeal

As a threshold issue, we disagree with defendant's contention, raised at oral arguments, that the People's reply brief should be struck because it raises new issues not found in the opening brief. Only one issue, that regarding the trial court's standard of review in light of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), is arguably a new issue not raised in the People's opening brief. However, in light of our disposition below, we deny the motion to strike.

### I. Jury Instructions

■ The People contend the trial court erred by vacating the sentences for second degree kidnapping after concluding that the instructions and verdict forms did not adequately instruct the jury that the sentencing enhancers must be proved beyond a reasonable doubt. We agree.

Second degree kidnapping is generally a class four felony. It is a class three felony if it is "accomplished by the use of a deadly weapon," § 18–3–302(4)(a)(II), C.R.S.2003, and it is a class two felony if "[t]he person kidnapped is a victim of a robbery." Section 18–3–302(3)(b), C.R.S.2003.

■ When a trial court misinstructs the jury on an element of an offense, either by omitting or misdescribing that element, that error is subject to constitutional harmless or plain error analysis. *Griego v. People*, 19 P.3d 1 (Colo.2001). Where counsel fails to object or to tender instructions on the omitted elements, appellate courts review for plain error. *People v. Stewart*, 55 P.3d 107 (Colo.2002); *see People v. Sepulveda*, 65 P.3d 1002 (Colo.2003).

■ At trial, defendant made a blanket objection to the instructions on grounds that the matter should not have gone to the jury and that the instructions were erroneous. He generally objected to all elemental instructions as being "inaccurate descriptions of Colorado law" and specifically objected to one instruction as containing "inaccurate definitional instructions," but he made no specific objection to any other individual instruction or to the verdict forms. Therefore, we review for plain error. *See* Crim. P. 30 (only grounds specified in objections to instructions shall be considered on review); *Moore v. People*, 925 P.2d 264 (Colo.1996); *Thomas v. People*, 820 P.2d 656 (Colo.1991).

■ Plain error occurs when the error so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *People v. Garcia*, 28 P.3d 340 (Colo.2001). In the context of instructional error, plain error occurs when a review of the entire record demonstrates a reasonable possibility that the improper instruction contributed to the defendant's conviction. *People v. Stewart, supra; Espinoza v. People*, 712 P.2d 476 (Colo.1985).

■ Although a sentence enhancement provision is not an element of the offense charged, the enhancing factor must be proved beyond a reasonable doubt. *Armintrout v. People*, 864 P.2d 576 (Colo.1993); *Beigel v. People*, 683 P.2d 1188 (Colo.1984).

Here, the trial court provided proper instructions on (1) the definition of reasonable doubt and the requirement that each element of each count must be proved beyond a reasonable doubt; (2) the elements of second degree kidnapping, aggravated robbery, and robbery; and (3) the definition of a deadly weapon.

The verdict form for the second degree kidnapping of the manager trainee included the following:

[ ] [Manager trainee] was the victim of a robbery.

[ ] [Manager trainee] was not the victim of a robbery.

[ ] The crime of SECOND DEGREE KIDNAPPING was accomplished by the use of a deadly weapon.

[ ] The crime of SECOND DEGREE KIDNAPPING was not accomplished by the use of a deadly weapon.

The verdict form pertaining to the crew member contained only the latter two interrogatories regarding the use of a deadly weapon. No separate crime of violence instruction was given, and the enhancement factors were not included in the elemental instruction defining second degree kidnapping.

In ruling on defendant's Crim. P. 35 motion, the trial court held that the second degree kidnapping verdict forms did not set forth the burden of proof and the interrogatories gave the jury no guidance as to any standard by which it was to reach its decision concerning the enhancers. The court concluded that there was a reasonable probability that defendant could have been prejudiced by this error. The People acknowledge in their reply brief that it was error that no single instruction expressly told the jury that it could find the existence of an enhancement factor only if that factor had been proved beyond a reasonable doubt.

We agree that the instructions and verdict form did not adequately inform the jury that it must find the enhancement factors beyond a reasonable doubt. *See People v. Russo,* 677 P.2d 386 (Colo.App.1983)(instructions and verdict forms were inadequate where jury was not instructed on elements of crime of violence or that reasonable doubt standard applied, but error was harmless), *rev'd on other grounds,* 713 P.2d 356 (Colo.1986). *But see Beigel v. People, supra* (reversible error when factor was not included in elemental instruction and the verdict form interrogatories did not state the reasonable doubt standard).

## A.

We nevertheless agree with the People that there was no plain error.

Failure to instruct the jury properly does not constitute plain error where the subject of the error in the instruction is not contested at trial or where evidence of the defendant's guilt is overwhelming. *Bogdanov v. People,* 941 P.2d 247, *amended,* 955 P.2d 997 (Colo.1997); *see People v. Fichtner,* 869 P.2d 539 (Colo.1994).

Here, the elements of robbery were completely subsumed in the aggravated robbery instruction, and the jury was instructed that it must find defendant guilty of aggravated robbery beyond a reasonable doubt. The trial court concluded that the evidence of defendant's guilt was not overwhelming, but it stated, "Defendant did not dispute that the robbery occurred. He insisted that he was not the perpetrator."

We conclude there is no dispute that the robbery occurred and there is no reasonable possibility that the jury could have failed to find that the manager trainee was the victim of a robbery. Consequently, defendant's sentence for the second degree kidnapping of the manager trainee was properly enhanced to a class two felony.

## B.

We also agree with the People that the inadequacy of the instruction concerning proof of the use of a deadly weapon did not rise to the level of plain error.

Defendant concedes that his defense was based primarily on misidentification. Defendant disputed only whether the asportation element of kidnapping was satisfied and whether the gun recovered from him at the time of his arrest on the unrelated murder charge was the weapon used in the kidnapping and robbery. He did not dispute the kidnapping was by the use of a deadly weapon.

Because the use of the deadly weapon was uncontested at trial, there was no plain error. *See Espinoza v. People, supra,* 712 P.2d at 478 (no plain error where defendant did not contest mental state at trial and premised defense "almost entirely on a theory of mistaken identity"); *People v. Huggins,* 825 P.2d 1024 (Colo.App.1991)(no plain error as to asportation element in kidnapping when defen-

dant relied solely on the defense of misidentification); *People v. Esquibel*, 794 P.2d 1065 (Colo.App.1990)(no plain error where unlawful entry element of burglary was omitted, but defendant's defense went to identity).

### C.

■ We also agree with the People's separate contention that the court erred in applying *Apprendi v. New Jersey, supra*. Under our disposition, defendant's original conviction must be reinstated. The record reflects that defendant's conviction was final in 1998 before *Apprendi* was decided, and a division of this court has determined that the rule announced in *Apprendi* does not apply retroactively to collateral attacks on judgments that were already final when *Apprendi* was announced. *People v. Bradbury*, 68 P.3d 494 (Colo.App.2002). We agree with the analysis and holding in that case.

### Defendant's Appeal

### II. Ineffective Assistance of Counsel

Defendant presents thirteen contentions relating to ineffective assistance of trial counsel and three relating to ineffective assistance of appellate counsel. We address several threshold issues here.

### A.

■ Defendant contends that the court applied the wrong standard by requiring him to prove that but for counsel's performance, the outcome would have been different. We disagree.

■ To prevail on a claim of ineffective assistance of counsel, the defendant must establish that (1) counsel's performance fell below the level of reasonably competent assistance demanded of attorneys in criminal cases; and (2) the deficient performance prejudiced the defense. To establish prejudice, the defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Davis v. People*,

871 P.2d 769 (Colo.1994); *People v. Russell*, 36 P.3d 92 (Colo.App.2001).

■ A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland v. Washington, supra; see Davis v. People, supra.*

■ Because a presumption of validity attaches to a judgment of conviction, the burden is on the defendant in a Crim. P. 35(c) proceeding to prove both elements of an ineffective assistance of counsel claim by a preponderance of the evidence. *Davis v. People, supra; People v. Russell, supra.* If a court determines that a defendant failed to affirmatively demonstrate prejudice, it may resolve the claim on that basis alone. *People v. Gandiaga*, 70 P.3d 523 (Colo.App.2002).

■ The *Strickland* standard also applies to a claim of ineffective assistance of appellate counsel. To satisfy the prejudice standard where a defendant has received full appellate review of his convictions, the defendant must demonstrate meritorious grounds for reversal. *People v. Valdez*, 789 P.2d 406 (Colo.1990).

Here, the court followed the standard set forth in *Strickland* and its "Colorado counterparts." The court then correctly stated that "defendant must show that there is a reasonable probability that, but for counsel's professional errors, the result would have been different."

We conclude the court applied the proper standard.

### B.

■ Defendant also contends that trial counsel rendered ineffective assistance by committing "character assassination" of defendant. We disagree.

In opening statement, defense counsel asserted that defendant did not commit the robbery. However, he also stated that police brought intense pressure to bear on anyone connected with the unrelated murder case, defendant's friends were motivated to turn against him and falsely accuse him in this case to avoid or reduce their own liability in the murder case, and they knew investigators were eager for them to implicate defendant

in the robbery. Defense counsel referred to defendant as a "pariah in our community" and spoke of other uncharged robberies that defendant's girlfriend connected to defendant.

During questioning, defense counsel either introduced or allowed the prosecution to introduce testimony that defendant was sexually intimate with females other than his girlfriend; testimony that defendant, some of his friends, his girlfriend, and trial witnesses went by the moniker "UNC family" and shared money and marijuana; and testimony that defendant's girlfriend initially connected defendant to a different robbery at the same restaurant.

Trial counsel explained at the Crim. P. 35(c) hearing that he knew a substantial number of the jurors were aware of the murder case. He saw no inconsistency in asking the jurors to consider the enormous pressure on witnesses to cooperate with the government, and he noted that the "milieu" they lived in was saturated with the murder case.

The court held that defense counsel made a "calculated decision." It found that counsel's decision to use the allegations of the murder case to buttress his impeachment of the prosecution witnesses he sought to depict as "snitches" was a "reasonable strategy" that clearly caught the prosecution off guard. The court stated that several "snitch witnesses" were directly related to the murder case.

We agree with the court that counsel needed to craft a strategy that was appropriate for the case at the time it was tried. *See People v. Gandiaga, supra.* The record reveals that both the friend who connected defendant with the handgun in this case and defendant's girlfriend faced numerous felonies in connection with the murder case. The brief references to their social setting helped lay the groundwork to argue that they were unreliable and that they lied to please the police to avoid or reduce their own criminal liability in the murder case.

## C.

■ Defendant also contends trial counsel rendered ineffective assistance by failing to impeach the assistant manager with significant available information. We disagree.

The assistant manager testified that he helped defendant commit the robbery, but did so because defendant had threatened to harm him and his family. He explained that he initially refused defendant's requests for help with the robbery, but that a couple of weeks before the robbery, someone "jumped" his sister. According to the assistant manager, after defendant let him know he was involved in the incident, the assistant manager agreed to help with the robbery.

Defendant's counsel cross-examined the assistant manager at length, including the details of his changing stories to police about his sister and defendant.

At the Crim. P. 35(c) hearing, the sister testified that she was attacked by a woman and a man, but did not know the identity of either party, and initially suspected family members, not defendant. Defendant argues that this testimony at trial would have shown that he had nothing to do with the incident.

We agree with the trial court that no impeachment material arose from this incident. The inability of the sister to identify her attackers is not relevant to whether defendant took credit for the attack and used the incident as leverage against the assistant manager. Further, defendant concedes that trial counsel investigated the incident and initially considered the sister to be a crucial witness. We conclude that trial counsel's investigation was sufficient and that any failure to call the sister as a witness did not constitute ineffective assistance of counsel. *See People v. Norman,* 703 P.2d 1261 (Colo. 1985).

■ Defendant also argues that counsel failed to impeach the assistant manager with evidence of an admitted employee theft he committed three years before the robbery. However, counsel got the assistant manager to admit on cross-examination that he was not above stealing from his employer. Defendant does not demonstrate a reasonable probability that the additional information would have caused a different outcome.

## D.

 Defendant also contends that trial counsel was ineffective by participating in numerous off-the-record proceedings and by failing to preserve the record. We disagree.

 As a general proposition, a criminal defendant is entitled to a record on appeal that includes a complete transcript of the proceedings at trial. *People v. Rodriguez*, 914 P.2d 230 (Colo.1996); *People v. Wolfe*, 9 P.3d 1137 (Colo.App.1999). Thus, the trial court in a criminal case must record all bench and sidebar conferences unless the parties agree otherwise. However, a failure to record such conferences does not automatically constitute reversible error. *Jones v. District Court*, 780 P.2d 526 (Colo.1989); *People v. Wolfe, supra*. To obtain relief, a defendant must demonstrate specific prejudice resulting from the state of the record. *People v. Rodriguez, supra; People v. Wolfe, supra*.

The trial court granted defendant's pretrial motion to require all proceedings in this case to be on the record, including "all proceedings held at the bench, all side bar proceedings, all proceedings held in chambers or elsewhere, all ex parte proceedings." Defendant's motion for postconviction relief documented approximately one hundred off-the-record proceedings. However, defendant does not allege whether or how the failure to transcribe these proceedings prejudiced him. While he apparently argues that the lack of a complete record prevents him from documenting prejudice and that neither he nor trial counsel can recall the proceedings well enough to document prejudice, he nonetheless maintains they were "of obvious importance."

Trial counsel testified at the Crim. P. 35(c) hearing that any off-the-record proceedings did not address significant issues and did not affect the integrity of the record. The trial court held that defendant had the opportunity to develop this issue further at the hearing, but did not elicit the specifics of any of the proceedings.

We conclude that defendant has not established prejudice from any lack of a record of the proceedings. *See People v. Vialpando*, 804 P.2d 219 (Colo.App.1990)(no reversible error where record contains sufficient colloquy between court and counsel to enable a reviewing court to consider the legal issues raised by the defendant).

## E.

 Defendant also contends that his trial counsel rendered ineffective assistance at the sentencing hearing. We disagree.

Trial counsel argued in mitigation that defendant was only nineteen years old and that this was his first felony conviction. The prosecutor argued for the maximum possible sentence of 110 years, citing defendant's two juvenile adjudications for aggravated robbery. However, when the prosecutor raised other uncharged crimes allegedly committed by defendant, trial counsel objected, and the trial court ruled that it would consider only those undisputed facts contained in the presentencing report.

Defendant has not demonstrated a reasonable probability that, but for counsel's performance, the result of the sentencing hearing would have been different. *See Davis v. People, supra; People v. Russell, supra*. Defendant argues, relying on *Patrasso v. Nelson*, 121 F.3d 297 (7th Cir.1997), that prejudice should be presumed. However, unlike here, in *Patrasso*, defense counsel barely spoke with his client, conducted no investigation, and spoke at the sentencing hearing only to reply twice to the trial court's inquiries that he had "nothing," and the *Patrasso* court held that counsel literally abandoned his client at sentencing.

## F.

Defendant also contends that appellate counsel was ineffective in failing to pursue or advise him of his right to pursue certain postconviction remedies. We disagree.

### 1.

 We reject defendant's assertion that appellate counsel was ineffective by failing to file a petition for writ of certiorari to the United States Supreme Court or to advise defendant that he had a right to do so.

In *People v. Valdez, supra,* the supreme court held the defendant had a right to file his petition for certiorari review by the Colorado Supreme Court of the judgment of the Court of Appeals. Thus, the defendant had a right to rely on counsel's skill for the purpose of preparing and filing that petition. The court applied the test in *Strickland v. Washington* and determined the defendant had failed to establish the prejudice prong.

However, a criminal defendant does not have a constitutional right to counsel to pursue applications for review in the United States Supreme Court. Thus, a defendant cannot be deprived of the effective assistance of counsel by retained counsel's failure to file the application timely. *Wainwright v. Torna,* 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982); *see Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974); *People v. Valdez, supra; People v. Williams,* 736 P.2d 1229 (Colo.App.1986).

Here, neither defendant nor his appellate counsel filed a petition for writ of certiorari in the United States Supreme Court. The trial court found that appellate counsel rendered ineffective assistance by not doing so.

We conclude that because counsel had no duty to file the discretionary petition, failure to do so cannot constitute ineffective assistance of counsel.

As to defense counsel's alleged failure to advise defendant of his right to seek certiorari review in the United States Supreme Court, even if the Colorado Supreme Court's opinion in *People v. Valdez* could be read to require such an advisement, because defendant here has not established that the Court of Appeals judgment was erroneous, he has not shown prejudice under *Strickland. See People v. Valdez, supra.*

2.

■ Defendant also asserts that appellate counsel was ineffective by not filing a motion for sentence reduction pursuant to Crim. P. 35(b). We reject this contention.

Postconviction counsel's failure to file a timely Crim. P. 35(b) motion may constitute ineffective assistance. *People v. Duke,* 36

P.3d 149 (Colo.App.2001); *see Swainson v. People,* 712 P.2d 479 (Colo.1986).

Here, defendant has not demonstrated a reasonable likelihood that his sentence would have been reduced. Thus, he has not established prejudice.

### III. Deputy District Attorney's Testimony

We reject defendant's contentions of error related to a deputy district attorney's testimony at trial.

### A.

■ Defendant contends the trial court abused its discretion in not appointing a special prosecutor because a deputy district attorney was an important witness against defendant. We disagree.

At the time of trial, § 20–1–107(2) provided: "If the district attorney is interested ... in any case which it is his duty to prosecute or defend, the court having criminal jurisdiction may appoint a special prosecutor...." Colo. Sess. Laws 1977, ch. 214 at 858–59.

■ A district attorney must be disqualified in a criminal case where that attorney or a member of his or her staff will appear as a witness and give testimony of sufficient consequence to prevent a fair trial. *Pease v. District Court,* 708 P.2d 800 (Colo. 1985); *see People v. Palomo,* 31 P.3d 879, 882 (Colo.2001)(disqualification appropriate if an attorney in the district attorney's office is a "material" witness). Such circumstances do not exist where the attorney's testimony will be cumulative or relevant only to an uncontested matter. *People v. District Court,* 192 Colo. 480, 560 P.2d 463 (1977).

■ One who seeks to disqualify a prosecuting attorney must establish supporting facts. *Wheeler v. District Court,* 180 Colo. 275, 504 P.2d 1094 (1973). That the defense intends to call the prosecutor as a witness does not, without more, dispose of the question. *Riboni v. District Court,* 196 Colo. 272, 586 P.2d 9 (1978).

■ Trial courts have broad discretion in determining whether they should disqualify a district attorney from prosecuting a particular case. A court abuses its discretion

if it makes a manifestly arbitrary, unreasonable, or unfair decision. *People v. Palomo, supra.*

Here, before trial defendant moved for the appointment of a special prosecutor. The motion alleged that two investigators and the deputy district attorney confronted the assistant manager about discrepancies in his story; that the deputy district attorney, by his own admission, "got in [the assistant manager's] face"; and that the assistant manager then changed his story and implicated defendant. It stated that the district attorney had an interest in this case because (1) the prosecution was undertaken to bolster the penalty phase in defendant's murder case; (2) the decision to immunize the assistant manager for his role in the robbery should be made by a disinterested prosecutor; and (3) the deputy district attorney was a crucial witness for the defense because he could rebut an investigator's testimony at the preliminary hearing that no pressure was put on the assistant manager to induce him to give his latest version of events.

After a hearing, the trial court denied the motion and concluded with record support that (1) the district attorney's office had no interest in the case aside from its professional prosecutorial responsibility, (2) it was practically uncontested that the deputy district attorney "got in [the assistant manager's] face," even though another witness referred to it as a confrontation, and (3) there was not such an appearance of impropriety that required the court to disqualify the district attorney's office. As a result, the deputy district attorney did not participate as a prosecutor in the case, and the trial court allowed him to testify at trial.

Under these circumstances, defendant did not show that the deputy district attorney would give testimony of sufficient consequence to prevent a fair trial. *See Riboni v. District Court, supra* (point would probably be conceded at trial and if not, two other witnesses could testify to the point). Thus, the trial court did not abuse its discretion.

Consequently, we need not reach defendant's contention that appellate counsel's failure to raise this issue on appeal constituted ineffective assistance.

## B.

■ Defendant also contends the deputy district attorney's trial testimony denied him his right to a fair trial. He asserts that (1) the deputy district attorney's testimony on how he prepares witnesses was irrelevant; (2) his testimony on how defense attorneys prepare cases was irrelevant and denigrating; (3) he gave his personal opinion of defendant's guilt; (4) he misdescribed the affirmative defense of duress when explaining why the assistant manager was not charged; (5) his testimony on the considerations and process for granting immunity was irrelevant and improperly bolstered the assistant manager's credibility; and (6) his testimony included a considerable amount of hearsay. We reject this contention.

■ When the defense opens the door to a topic, the prosecution has a right to explain or rebut any adverse inferences that might have resulted from the questions. *See People v. Tenorio,* 197 Colo. 137, 590 P.2d 952 (1979); *People v. Ashley,* 687 P.2d 473 (Colo. App.1984).

Here, defendant's strategy was to portray the prosecution witnesses as succumbing to the "white heat" pressure by the district attorney's office to implicate defendant. Defendant presented the deputy district attorney's testimony to show that he pressured the assistant manager into changing his story.

The testimony regarding the district attorney's preparation of witnesses and how the assistant manager came to be offered immunity was relevant to rebut the inferences of improper influence. The deputy district attorney did not testify that he believed defendant was guilty. He explained that when he said he was "in it for [defendant]," he meant only that he was interested in the person who "had that gun in his hand."

The alleged hearsay related only to summaries of information the deputy district attorney received from investigators and another deputy district attorney and was offered to show why he took certain actions. Defendant objected to most of the

statements, and a limiting instruction was given as to that purpose. Finally, although the deputy district attorney's explanation of duress applied by defendant was incomplete, he was merely addressing the decision whether to charge the assistant manager.

We conclude that the testimony was within the scope of the direct examination and was the result of defendant's having opened the door. *See* CRE 611(b).

Further, because the deputy district attorney's testimony was proper, trial counsel did not render ineffective assistance by failing to object to it.

## IV. Information

We reject defendant's contentions regarding the sufficiency and reading of the information.

### A.

Defendant contends that deficiencies in the information—namely, (1) omission of the kidnapping element of asportation, (2) omission of elements of robbery, which was a sentencing enhancer for kidnapping, (3) inclusion of mutually exclusive elements in the kidnapping counts, and (4) omission of elements of the offense of theft—denied him due process of law. He asserts the counts are jurisdictionally deficient since they fail to adequately allege an offense. We disagree.

■ If an information identifies the essential elements of the crime charged, then it is sufficient. This requirement is satisfied if the language in the charge tracks the statutory language. *People v. Melillo*, 25 P.3d 769 (Colo. 2001); *People v. Williams*, 984 P.2d 56 (Colo. 1999)(*Williams II*); *People v. Hunter*, 666 P.2d 570 (Colo.1983).

■ A charge is sufficient if it alleges sufficient facts to permit the accused to prepare an adequate defense and assure that the defendant cannot be prosecuted again for the same crime. *People v. Melillo, supra*; *People v. Hunter, supra*.

■ Here, the language in each of the charges tracks the statutory language. Counts one and two follow the statutory language of the second degree kidnapping statute and sufficiently set forth the element of asportation. Next, while count one does not set forth the elements of "robbery," it nevertheless provided defendant with sufficient notice of the charge against him. *See People v. Palmer*, 87 P.3d 137, 139 (Colo. App. 2003). Moreover, defendant has not alleged that he was unable to prepare an adequate defense or that he could be subject to further prosecution for the robbery referenced in the charge. See *Williams II, supra*.

■ Further, counts one and two are not deficient in setting forth both "robbery," which enhances second degree kidnapping to a class two felony, and "use of a deadly weapon," which enhances the offense to a class three felony. These elements provide for different penalties for a conviction of second degree kidnapping, depending on the jury's verdicts. *See People v. Viduya*, 703 P.2d 1281, 1292 (Colo. 1985)(it is proper in one count of an information to charge all ways in which an offense might be committed, stating the several alternatives conjunctively with the use of the word "and").

■ Finally, count seven, the theft count, tracked the language of the theft statute and did not fail to provide defendant with notice of the charged offense.

Therefore, defendant has not demonstrated that his substantial rights were prejudiced, and we conclude that the courts of the information were substantively sufficient to confer jurisdiction on the trial court.

### B.

■ Defendant also contends the trial court's reading to the jury pool of a dismissed charge denied him his rights to due process and to a fair and impartial jury. We disagree.

■ The right to trial by a fair and impartial jury is guaranteed by both the Sixth Amendment to the United States Constitution and article II, §§ 16 and 23 of the Colorado Constitution. Here, because defendant did not object, we review under the plain error standard. *See People v. Weinr-*

*eich*, 98 P.3d 920, 2004 WL 583617 (Colo.App. No. 02CA0995, Mar. 25, 2004).

While addressing the jury pool during orientation, the court inadvertently read the dismissed aggravated robbery charge and robbery sentence enhancer as to the crew member. However, the court noted to counsel that at least a week would pass before the jurors returned and that the odds of the jurors remembering the specifics of the information were "kind of remote." In the court's view, the error was probably harmless, provided any counts that went to the jury were properly stated. The court asked whether any objections were being asserted, and defendant's counsel replied, "No."

Twenty days elapsed before the jury instructions and verdict forms, which correctly stated the charges, were submitted to the jury. In closing arguments, the prosecutor explained that defendant was not charged with aggravated robbery as to the crew member because he never controlled the restaurant's money.

Defendant's trial counsel testified at the Crim. P. 35(c) hearing that he did not believe the trial court would have granted a mistrial and that asking for a curative instruction would "simply call attention to the fact."

The court found that no plain error occurred, noting that defendant had not alleged specific prejudice. We agree.

Defendant was tried for kidnapping the crew member, and the reading of the dismissed charge did not introduce other bad acts of defendant, as occurred in the cases he cites, *People v. Goldsberry*, 181 Colo. 406, 509 P.2d 801 (1973)(testimony that defendant was buying drugs when charged only with receiving stolen property); *Edmisten v. People*, 176 Colo. 262, 490 P.2d 58 (1971)(defendant charged with aggravated robbery asked whether "he used to stash loot" in basement of prosecution witness).

## C.

■ We reject defendant's contention that trial counsel rendered ineffective assistance by not objecting to the misreading of the information or moving for a mistrial. We have already concluded that defendant has not shown prejudice resulting from the misreading.

## V. Suppression of Statements and Evidence

We are not persuaded by defendant's contentions regarding suppression of certain statements and evidence.

## A.

■ Defendant contends the trial court erred by admitting the assistant manager's out-of-court statements in violation of the co-conspirator hearsay exclusion and the Confrontation Clause. He does not point to specific testimony, but objects generally to the admission of the assistant manager's out-of-court statements to friends, coworkers, and investigators between the robbery and the time of trial. We reject this contention.

## 1.

We conclude defendant's right to confrontation of witnesses was not violated.

A defendant's right to confrontation is satisfied when the hearsay declarant is produced for cross-examination. *People v. Oliver*, 745 P.2d 222 (Colo.1987); *see Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

Here, the assistant manager testified, and he was fully cross-examined on his out-of-court statements and his reasons for changing his story.

## 2.

■ We conclude the assistant manager's statements were not inadmissible hearsay.

The following statements are not hearsay: (1) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy, CRE 801(d)(2)(E); (2) a prior inconsistent statement by the declarant who testifies at the trial or hearing and is subject to cross-examination concerning the statement, CRE 801(d)(1)(A); or (3) a prior statement consistent with the declarant's testimony and offered to rebut an express or implied charge of recent fabrication or improper influence or motive, CRE 801(d)(1)(B).

The prosecution, as the proponent of a co-conspirator's statement, bears the burden of establishing by a preponderance of the evidence that there was a conspiracy, that the defendant and the declarant were members of the conspiracy, and that the declarant made the statement during the course and in furtherance of the conspiracy. *People v. Montoya,* 753 P.2d 729 (Colo.1988); *People v. James,* 40 P.3d 36 (Colo.App.2001).

Co-conspirator statements made after the conspirators attain the object of the conspiracy are not admissible under this exception unless the proponent demonstrates an express original agreement among the conspirators to continue to act in concert to cover up, for their self-protection, traces of the crime after its commission. *Blecha v. People,* 962 P.2d 931 (Colo.1998).

Here, although the trial court applied the wrong standard by using the sufficiency of the evidence standard of *People v. Bartowsheski,* 661 P.2d 235 (Colo.1983), rather than *Blecha's* preponderance of the evidence test, the error was harmless because the prosecution showed by a preponderance of the evidence that defendant and the assistant manager entered into a conspiracy to commit the robbery.

To the extent the assistant manager testified that approximately a month before the robbery defendant said he planned to rob the restaurant, this was a statement by a party-opponent. CRE 801(d)(2). The assistant manager's testimony that he agreed "at some point" before the robbery to participate with defendant was a comment on the existence of the conspiracy.

Nor does the record support defendant's contention that the only evidence of the conspiracy is the assistant manager's statements. The assistant manager testified at trial that his role in the robbery was to send the manager trainee to the restroom where defendant was hiding and to make sure that defendant got all the money from the safe and that no one knew that defendant was the perpetrator. This testimony was corroborated by another witness, who testified that defendant told him that the assistant manager was involved in the robbery, and also by defendant's girlfriend, who testified that she overheard defendant and the assistant manager discussing the robbery both before and after it occurred.

Defendant argues nonetheless that the bulk of the assistant manager's out-of-court statements were not made in furtherance of the conspiracy. We are not persuaded.

The assistant manager told coworkers that the voice he heard was not that of defendant. He also admitted he lied about the perpetrator's identity to police immediately after the robbery and to an investigator in the murder investigation. We conclude that these statements were in furtherance of the assistant manager's role in the conspiracy to conceal defendant's identity and thus were admissible.

The assistant manager's changing stories to investigators in which he revealed defendant's identity did not further the conspiracy, but were nevertheless admissible as prior inconsistent statements. *See* CRE 801(d)(1)(A). Any consistent statements by the assistant manager were admissible to rebut defendant's opening statement that the assistant manager's testimony implicating defendant was fabricated and the result of an improper motive. *See* CRE 801(d)(1)(B); *People v. Eppens,* 979 P.2d 14 (Colo.1999). The assistant manager was fully cross-examined on all of the statements.

Defendant further argues that the assistant manager's other out-of-court statements were admitted through other witnesses, but he does not identify any of those statements.

### B.

Contrary to defendant's contention, we also conclude that the People's questioning of the assistant manager did not violate defendant's rights to remain silent and to have the prosecution bear the burden of proof at trial.

Every person accused of a crime has the right to remain silent in the face of a criminal accusation. *People v. Ortega,* 198 Colo. 179, 597 P.2d 1034 (1979); *see* U.S. Const. amend. V; Colo. Const. art. II, § 18.

A witness should be allowed to explain or rebut any adverse inferences resulting from cross-examination in order to place matters in context so that the jury can evaluate the existence and significance of the witness's alleged bias. *People v. Lesney,* 855 P.2d 1364 (Colo.1993).

Here, defendant's counsel stated in opening that the "white heat" of the murder investigation caused the assistant manager to "begin to sweat" and that police followed him across the country. According to counsel, the assistant manager lied to get a deal allowing him to walk out "scot-free" if he just said, "[Defendant] made me do it." On cross-examination of the assistant manager, defense counsel sought to show that he implicated defendant only to avoid his own prosecution. On redirect examination, the assistant manager testified that he initiated contact with police.

Defendant points to the assistant manager's testimony that no one was present when defendant threatened him to keep silent during the robbery and that no one could prove that the assistant manager was not threatened. We conclude the questioned testimony was not a comment on either the burden of proof or defendant's choice to remain silent. *See, e.g., People v. Wieghard,* 727 P.2d 383 (Colo.App.1986)(prosecutor's comment that gunman recognized the victim and that this identification was not heard during the trial was not a comment on defendant's failure to testify); *People v. Marin,* 686 P.2d 1351 (Colo.App.1983)(prosecutor's statement that he could not present a witness who would testify as to the defendant's state of mind was not a comment on defendant's failure to testify); *cf. People v. Ortega, supra* (prosecutor's argument that defendant did not proclaim his innocence and explain his actions after receiving full constitutional warnings was a comment on his silence).

### C.

We also disagree with defendant's contention that the trial court erred by not suppressing as the fruit of the poisonous tree physical evidence seized after defendant made statements to police in alleged violation of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

In the context of a suppression motion, a trial court's findings of historical fact are entitled to deference by a reviewing court, but the trial court's application of legal standards to those facts is a question of law to be reviewed de novo. *People v. Rivas,* 13 P.3d 315 (Colo.2000).

Where the initial *Miranda* advisement and waiver are followed by a later interrogation not preceded by another *Miranda* advisement, the ultimate question becomes whether, considering the totality of circumstances, the defendant was sufficiently aware of the continuing nature of his or her constitutional rights so as to render any subsequent statement the result of a knowing, intelligent, and voluntary waiver of those rights. *People v. Chase,* 719 P.2d 718 (Colo. 1986); *People v. Freeman,* 47 P.3d 700 (Colo. App.2001); *see Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

A valid *Miranda* waiver need not be express, but may be inferred from the actions and words of the person interrogated. *People v. Hopkins,* 774 P.2d 849 (Colo.1989); *People v. Freeman, supra.*

Factors to consider include: (1) the time lapse between the initial *Miranda* advisement and the subsequent interrogation, (2) the extent to which the suspect has been informed or is aware of the subject matter of the interrogation, (3) whether officers or the suspect initiated the interview, (4) whether and to what extent the suspect was reminded of his or her rights prior to the interrogation, (5) the clarity and form of the suspect's acknowledgement and waiver, if any, and (6) the suspect's background and experience with the criminal justice system. No single factor is determinative; each is important and should be appropriately considered. *People v. Chase, supra; People v. Freeman, supra.*

Once the suspect has been given *Miranda* warnings and has invoked the right to silence and not the right to confer with an attorney, further interrogation is permissible

only under circumstances when the resumption of questioning is consistent with the scrupulous observance of the suspect's right to cut off questioning. *People v. Hopkins, supra; see Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

■ Even after invoking the right to counsel, the suspect is subject to further interrogation if he or she initiates further communications, exchanges, or conversations with the police. *Edwards v. Arizona, supra; People v. Hopkins, supra.*

Here, the record of the suppression hearing supports the trial court's findings that on December 15, 1993, police contacted defendant in the course of investigating the unrelated murders and, at his request, drove him to his home. There, at 1:15 a.m., a police detective advised defendant of his *Miranda* rights using a written advisement form. During the advisement, defendant grabbed the form from the detective and told him that he knew his rights and understood them and that there was no need to go through the advisement. The detective finished the advisement nonetheless, and defendant spoke willingly with police. Police later left defendant at his apartment.

A detective testified at the suppression hearing that at 10:32 a.m. the same morning, police again contacted defendant in the parking lot of his apartment building. They asked him whether he would voluntarily go to police headquarters to talk about the murders. Defendant declined and said he did not want to talk to anyone. The police advised defendant he was under arrest for first degree murder and handcuffed him. The police asked no questions and escorted defendant approximately fifty feet to a police car, a process that took a minute or two.

According to the detective, on his own accord and volition, defendant stated: "I suppose you want a gun." To clarify what defendant said, the detective asked: "You mean the gun?" with emphasis on "the." Defendant replied: "A gun" with emphasis on "a." The detective testified that defendant continued: "I'll take you to it and the gloves." Because he was not sure the other detective had heard, the detective stated: "Marv, he wants to take us to the gun." Defendant then commented: "No, a gun."

After the detective sergeant asked, "Do we have to walk or do we have to drive to get there?" defendant led the police around a corner to an adjoining building. After asking, "Where is it?" the police eventually seized a blue bag containing a semiautomatic handgun in a public area under an evergreen tree near the walking path.

Analyzing the statements under the Fifth Amendment and applying a bright line test requiring advisement under *Miranda* upon custody, the trial court found that (1) defendant clearly indicated his unwillingness to talk to officers when contacted in the parking lot; (2) his first statement thereafter was spontaneous, not the result of interrogation, and thus, was not suppressed; (3) the detective's first statement was the functional equivalent of interrogation and thus defendant's reply was inadmissible; (4) with the exception of his statement, "No, a gun," defendant's subsequent statements and evidence of his pointing to the bag were inadmissible; and (5) all the statements were voluntary.

The trial court, however, held that defendant had no reasonable expectation of privacy because the bag was abandoned in a public area, and he walked away from it. Therefore, the bag and handgun were admissible. According to the court, "the fact they find it, they walk together, is not indicative of any specific conversation or discussion or statement of the defendant."

At trial, the detective sergeant testified only that detectives conversed with defendant about the possible location of a gun and that they then walked to a location where the sergeant observed the gym bag. The sergeant did not testify that defendant raised the issue of "a gun" or that he told the other detective defendant wanted to take them to the gun. Nor did he testify that defendant led them to the gun. Defendant did not object to the questioning.

We agree that the bag and handgun were admissible, but under a different analysis. *See People v. Cerrone,* 780 P.2d 562 (Colo.App.1989)(affirming ruling although

reasoning differs from that of trial court). We are unaware of any Colorado law that imposes a bright line test requiring readvisement of a suspect after arrest where the totality of the circumstances demonstrates that the defendant knowingly, voluntarily, and intelligently waived his or her right to remain silent before speaking to police.

Here, defendant stated during his initial advisement that he knew and understood his *Miranda* rights, and he does not contest the sufficiency of his initial advisement and waiver. Approximately nine hours elapsed between the advisement and the later statements. At the second contact, once defendant expressed his desire to remain silent, the police did not ask him any questions. Despite his advisement of *Miranda* rights, defendant initiated further communication.

While the question, "You mean the gun?" could be construed as interrogation, the record reflects that defendant walked to where the bag had been placed without direction or coercion from the police. Walking together, the court found, was not indicative of any statement of defendant. Thus, we conclude that the seizure of the bag and handgun was not the fruit of an illegal interrogation. *See People v. Chase, supra* (four-day gap between advisement and statement upheld under totality of the circumstances).

Further, the recent decision of *United States v. Patane,* 542 U.S. 630, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004), dictates the same conclusion. In *Patane,* the Supreme Court held that the Self–Incrimination Clause of the Fifth Amendment is not violated by the introduction of nontestimonial evidence obtained as a result of voluntary, though unwarned, statements.

Here, the trial court found that defendant's statements were voluntary, and defendant does not contest this finding. Therefore, no grounds existed for suppression of the handgun.

### D.

Defendant contends that the detective sergeant's testimony at trial violated the trial court's suppression order. He argues that the prosecution erred by eliciting testimony that the detective sergeant and defendant conversed about the possible location of a gun and then walked directly to the gun. We conclude that the testimony complied with the court's order.

Having so concluded, we need not reach defendant's contention that failure to object to the testimony constituted ineffective assistance of counsel.

### E.

██ We also reject defendant's contention that the manager trainee's out-of-court identifications were so unduly suggestive as to render her in-court identification of defendant unconstitutionally unreliable.

Because defendant failed to object to the admission of identification evidence, we apply a plain error standard of review.

██ A defendant is denied due process of the law when an in-court identification is based on an out-of-court identification that is so unnecessarily suggestive as to render the in-court identification unreliable. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *People v. Mack,* 638 P.2d 257 (Colo.1981). The exclusionary rule has not been extended to in-court identifications alleged to be suggestive simply because of the typical trial setting. Unless a very substantial likelihood of irreparable misidentification exists, identification evidence is for the jury to weigh. *People v. Monroe,* 925 P.2d 767 (Colo.1996).

██ In determining whether the witness's in-court identification is based upon the witness's prior independent observations, a court is to consider five factors: (1) the opportunity of the witness to view the criminal at the time in question; (2) the witness's degree of attention; (3) the accuracy of any prior description of the criminal by the witness; (4) the level of certainty demonstrated by the witness at the later confrontation; and (5) the time that has elapsed between the crime and the confrontation. *People v. Monroe, supra.*

Here, at the preliminary hearing and at trial, the manager trainee testified that the perpetrator was a black male, but that she

could see only his nose or nose and cheeks because he was wearing a ski mask. She could not identify defendant as the suspect on either occasion. However, approximately six months after the preliminary hearing, she told the prosecutor and an investigator that she recognized defendant's nose when she saw him at the hearing.

At trial, she testified again that the suspect was a black male, but she could only see his nose or nose and cheeks because of the ski mask. She stated that some time before trial she saw defendant's picture in the newspaper and recognized the nose. She testified that when she saw defendant at the preliminary hearing "his nose looked familiar," and she pointed defendant out as the person whose nose she recognized. Defendant did not object to the testimony, but cross-examined her at length on this point.

The court held that (1) the manager trainee's testimony at trial was not an identification, only a statement that she recognized a nose, and the jury was authorized to use this evidence as it deemed appropriate, and (2) the "identification" was not impermissibly suggestive. Even if we assume that the nose recognition was an identification, we cannot conclude that its admission at trial rose to the level of plain error.

Defendant argues that the one-on-one showup at the preliminary hearing was "undoubtedly suggestive," but does not explain why the hearing was unnecessarily suggestive beyond that of a typical trial setting.

■ Defendant also argues that repeated media exposure was unduly suggestive. We disagree.

The manager trainee testified outside the hearing of the jury that she saw defendant's picture in newspapers and on television, but at trial she testified only to recognizing his nose from one newspaper picture. Defendant has not shown that that viewing was unduly suggestive, was other than accidental, or was prompted or emphasized by investigators or the People. See People v. Martinez, 734 P.2d 126 (Colo.App.1986) (identification not unduly suggestive where witness's first identification of defendant was a fortuitous

viewing of a newspaper picture without police involvement).

Defendant cites several cases for the proposition that even an accidental pretrial viewing of a defendant without governmental involvement may be unduly suggestive. See, e.g., People v. Hardiway, 874 P.2d 425 (Colo.App.1993)(finding sufficient police involvement and that one-on-one identification was unduly suggestive under the totality of the circumstances). However, defendant does not present facts that would warrant that conclusion here.

Because we have concluded that the trial court properly allowed the manager trainee's testimony, we need not reach defendant's contention that appellate counsel's failure to raise this issue on appeal constituted ineffective assistance.

### F.

■ We also disagree with defendant's contention that the prosecution's use of victim impact evidence violated his rights to due process and a fair trial.

Because defendant made no contemporaneous objection, we review this evidentiary issue only for plain error. People v. Willcoxon, 80 P.3d 817 (Colo.App.2002); see Wilson v. People, 743 P.2d 415 (Colo.1987).

■ "Evidence that does not relate to any proposition that must be proved may nonetheless be admitted for other purposes including ... background information." People v. Page, 907 P.2d 624, 635 (Colo.App.1995)(quoting J. Weinstein & M. Berger, Weinstein's Evidence ¶ 401[05] at 401–29 (1994)).

Here, defendant asserts error for the first time regarding testimony about some witnesses' family details, such as marital status, children, a wife's employment, and a wife's pregnancy, as well as the prosecutor's comments in opening statement that employees were preparing to close the restaurant and to go home to their families. Such information was brief and, in our view, did not implicate defendant in the robbery. The jury was instructed that it should not be swayed by sympathy.

He also objects to portions of testimony in which (1) a witness discussed his Halloween activities, which did not include defendant, and (2) a witness mentioned his wife's shock at hearing of the robbery and her insistence that the witness quit his job. However, the first portion was part of an attempt to fix the date just before the robbery when defendant was fired and threatened to return to "get" the manager. The second portion was part of a discussion immediately after the robbery as to whether defendant was the perpetrator.

Under the circumstances, we agree with the court that the evidence was "of minimal relevancy but of even less prejudicial impact." Accordingly, we reject defendant's contention that trial counsel rendered ineffective assistance by not objecting to the evidence.

### VI. Polygraph Issues

Defendant contends that the trial court erred in disallowing polygraph evidence and in allowing a witness who failed a polygraph test to testify and that trial counsel provided ineffective assistance regarding the polygraph results. We reject these contentions.

### A.

The court's disallowing the evidence of the witness's failed polygraph examinations did not violate defendant's rights to confront witnesses, present exculpatory evidence, and present a defense.

The trial court held that pursuant to *People v. Anderson*, 637 P.2d 354 (Colo.1981), polygraph evidence is inadmissible as unreliable under the *Frye* test. This issue was fully litigated upon direct appeal. A defendant cannot use a proceeding under Crim. P. 35 to relitigate matters fully and finally resolved in an earlier appeal. *People v. Rodriguez, supra; People v. Martinez*, 36 P.3d 201 (Colo.App.2001).

We also note that in *People v. Wallace*, 97 P.3d 262 (Colo.App.2004), a division of this court held that the reasoning in *Anderson* is still viable after *People v. Shreck*, 22 P.3d 68 (Colo.2001), and concluded there was no error in denying a motion to introduce polygraph evidence. We agree with that holding.

### B.

Defendant nonetheless contends that trial counsel should have offered evidence on advances in polygraph examinations since *People v. Anderson, supra*, and should have argued for the admissibility of such evidence. In light of clear Colorado law to the contrary at that time and *People v. Wallace, supra*, we reject this contention.

### C.

Defendant contends the prosecution's decision to have an alleged accessory to the murder charges testify, knowing that he had failed two polygraph examinations, violated defendant's due process rights. We disagree.

False testimony, when knowingly used, or when used recklessly or without regard or inquiry as to the truth of the facts asserted, is a due process violation that requires reversal. *DeLuzio v. People*, 177 Colo. 389, 494 P.2d 589 (1972).

Here, defendant does not indicate which statements he contends are lies recklessly presented by the prosecution. In his direct appeal, a division of this court held that evidence showed that the witness was confronted by the police about his repeated lies, and defendant was afforded the opportunity to cross-examine the witness on his credibility and possible bias.

Review of the witness's testimony in its entirety does not reveal that the People knowingly or recklessly offered false testimony.

### VII. *Curtis* Advisement

Defendant contends that he was denied his right to testify by the trial court's improper advisement under *People v. Curtis*, 681 P.2d 504 (Colo.1984), and that he did not knowingly, intelligently, and voluntarily waive that right. We conclude this issue has been waived.

Defendant did not raise this issue in his direct appeal, which was completed before

*People v. Blehm,* 983 P.2d 779 (Colo.1999), was announced. In *Blehm,* the supreme court held: "As to a defendant whose direct appeal has been exhausted as of the date of this opinion, any claim of ineffective waiver of the right to testify was waived if it was not raised on direct appeal in accordance with the preexisting *Curtis* framework."

 Defendant further contends that if the issue has been waived, he was denied effective assistance of appellate counsel. In this regard, *Blehm* also stated: "The defendant may, of course, bring an ineffective assistance of counsel claim through particularized allegations in a post-conviction motion, even where the claim is based in part upon the denial of the right to testify." *People v. Blehm, supra,* 983 P.2d at 792 n. 10. Although defendant may assert that appellate counsel rendered ineffective assistance by not raising the issue on direct appeal, we reject that claim.

 Waiver of the right to testify must be voluntary, knowing, and intentional, and the existence of an effective waiver should be ascertained by the trial court on the record. In a postconviction relief proceeding, the burden is on the defendant to establish his or her allegations by a preponderance of the evidence. In general, the burden is on the prosecution to show effective waiver of a fundamental right. If the prosecution meets this initial burden by establishing a prima facie case, then the defendant must present evidence from which it could be reasonably inferred that the waiver was not voluntary, knowing, and intentional. *People v. Curtis, supra.*

 The advisement given must include the *Curtis* elements and avoid misleading a defendant about the consequences of a decision not to testify. *People v. Blehm, supra; People v. Chavez,* 853 P.2d 1149 (Colo.1993).

Here, defendant argues that the trial court included misleading additional information that confused him and rendered his waiver neither knowing and voluntary, nor intelligent. Defendant's argument is not supported by the record, and thus, we disagree.

After the traditional *Curtis* advisement was given, defendant asked the trial court

whether he could be asked about misdemeanor convictions, juvenile adjudications, or "stuff" connected with the murder case. The trial court replied that, as a general rule, he could not be asked about those issues unless defense counsel asked a question that "opens up something," or defendant said something that "opens it up," at which point the court would need to address that problem.

We are persuaded by the analysis in *People v. Raehal,* 971 P.2d 256 (Colo.App.1998), and apply it here. There, the trial court's extra advisement that the defendant could not be asked about misdemeanor convictions unless his attorney opened the door, and that the prosecution could then use his testimony to impeach him, did not mislead the defendant because it correctly stated the law. While the extra advisement in *Raehal* was slightly more complete, we conclude that here, as in *Raehal,* the court correctly informed defendant that he could face questioning about his history if he or his counsel opened the door.

 We also disagree with defendant's argument that the trial court did not make a finding on the record that the waiver was knowing, voluntary, and intelligent as required by "*Curtis* and its progeny." Defendant points to one statement from the advisement: "The court will accept [defendant's] acknowledgment of his Fifth Amendment rights as being voluntary under the circumstances."

We conclude that that finding was adequate. *See People v. Curtis, supra.*

Because the *Curtis* advisement and waiver were proper, appellate counsel could not have demonstrated the existence of meritorious grounds for reversal of the conviction. *See People v. Valdez, supra.* Therefore, counsel was not ineffective.

### VIII. Closing Argument

Defendant further contends that the prosecution's improper closing argument denied him his rights to a fair trial, an impartial jury, and due process. We disagree.

 Because defendant did not object to the closing argument, we review for plain

error. Unless a prosecutor's misconduct is flagrant or glaringly or tremendously improper, it is not plain error. *Harris v. People*, 888 P.2d 259 (Colo.1995); *People v. Constant*, 645 P.2d 843· (Colo.1982). A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial. *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985); *People v. Rodgers*, 756 P.2d 980 (Colo.1988).

### A.

■ Defendant asserts first that the prosecutor used an improper "golden rule" argument. We conclude there is no plain error.

■ "Golden rule" arguments, which ask jurors to imagine themselves in the place of the victim, are improper in criminal cases in contexts other than capital sentencing. *People v. Dunlap*, 975 P.2d 723 (Colo.1999); *People v. Fernandez*, 883 P.2d 491 (Colo.App. 1994).

Here, the prosecutor remarked during the closing argument: "Would you want to be moved, particularly in the way [the manager trainee] was, with a gun touching your right temple? Do you think you would feel that your risk of harm was being substantially increased?" Defendant did not object to the comment.

As the trial court held, the "golden rule" argument was "clearly" improper, and it should not have been made to the jury. However, the court found that it did not rise to the level of plain error. We agree.

The comment was made in the context of arguing that the elements of kidnapping were satisfied, was isolated, and was not part of a greater discussion of the manager trainee. *See People v. Dunton*, 881 P.2d 390 (Colo.App.1994)(isolated improprieties could not have affected the verdict), *aff'd*, 898 P.2d 571 (Colo.1995).

### B.

■ We also disagree with defendant's assertion that the prosecutor improperly commented on defense strategy and appealed to community sentiment.

■ A prosecutor is afforded considerable latitude in replying to an argument by opposing counsel. *People v. Vialpando, supra.*

Here, the prosecutor argued that in bringing the unrelated murder case into this case, defendant and his lawyer had chosen a "very bold and audacious strategy," and stated, "They want you to use that fact to his benefit." He argued that this strategy ran counter to everything the prosecution had tried to do by keeping it out. He urged the jury not to look at the evidence "through [defendant's] looking glass" or to follow defendant "down his rabbit hole."

We agree with the trial court that the prosecution was entitled to respond to defendant's theory and arguments.

Further, the comments were not an impermissible attack on defense counsel's good faith or an improper appeal to emotion. *See People v. Webster*, 987 P.2d 836 (Colo.App.1998)(comments were fair and proper comment on defendant's characterization of the facts and theory of the case).

We reject defendant's arguments that the prosecutor improperly commented on defendant's choice not to testify and that by attributing arguments and theories to defendant personally, the prosecutor drew attention to the fact that he did not testify. We see nothing in the prosecutor's statements that supports this argument.

### C.

■ We reject defendant's assertion that the prosecutor erred by vouching for prosecution witnesses.

■ While it is improper for counsel to express a personal belief in the truth or falsity of testimony during closing argument in a criminal trial, counsel may point to circumstances casting doubt on a witness's testimony and may draw reasonable inferences

from the evidence regarding the credibility of witnesses. *People v. Kerber*, 64 P.3d 930 (Colo.App.2002).

The prosecutor's comments here that investigators were "very experienced" and "very professional" were properly made in rebutting the defense theory that the investigators unprofessionally pressured the assistant manager into implicating defendant.

We do not agree with defendant that the prosecutor's statement that a police detective "knows when somebody is lying to him and they tell him the truth" was so flagrant as to constitute plain error. Here, the statement was made just before the prosecution reminded the jury that the assistant manager had asked the investigators, "You guys think I'm involved, don't you?" and in the context of showing that the detective's actions were inconsistent with the improper pressure that defendant alleged.

### D.

■ Defendant contends that trial counsel's failure to object to these portions of the prosecutor's closing argument constituted ineffective assistance of counsel. In view of our disposition, we address only the prosecution's "golden rule" argument.

Defendant does not allege or demonstrate prejudice from this passing argument, and we cannot conclude that objection to this argument would likely have led to a different outcome in the trial.

### IX. Jury Instructions

Defendant raises several contentions regarding the jury instructions. We reject these contentions.

Under Crim. P. 30, the parties shall make all objections to instructions before they are given to the jury, and "only the grounds so specified" shall be considered on review. Here, with one exception, defendant did not object to the instructional errors now asserted on appeal. Therefore, we review for plain error. *See* Crim. P. 52(b).

### A.

Defendant presents five separate contentions that the second degree kidnapping instructions were plainly erroneous. We are not persuaded.

#### 1.

■ We disagree with defendant that because the elemental instruction on second degree kidnapping used the term "any person" rather than naming the specific victims, the jury was not required to find beyond a reasonable doubt that a specific person was kidnapped.

Here, the elemental instruction for second degree kidnapping lists one element as "seized and carried any person from one place to another." Defendant argues that it is possible that the jury returned guilty verdicts without determining whether "any person" was the manager trainee, the crew member, or even the assistant manager.

However, both the information and the verdict forms stated that the victim as to count one was the manager trainee, and the victim as to count two was the crew member. While reading the verdict forms to the jury, the court so explained each form separately and stated that only if defendant were guilty should the jurors move on to the interrogatories. In closing argument, the prosecutor similarly explained who the victims of the two kidnapping counts were.

Defendant's reliance on *People v. Simmons*, 973 P.2d 627 (Colo.App.1998), is misplaced. In *Simmons*, the defendant was charged with one count of menacing against one named victim. However, evidence at trial indicated that a second person was also menaced, and the prosecutor told the jury in closing argument that it did not matter which of the two persons was the victim and even suggested that the defendant could menace himself.

■ Nor do we agree with defendant that the omission here was reversible error per se because it constituted a constructive amendment. In our view, no essential element was changed. *See People v. Rodriguez, supra* (a constructive amendment occurs when an essential element of the charged offense is

changed, thereby altering the substance of the charging document); *People v. Simmons, supra* (the instruction was not an amendment of the information because it did not name an additional or different victim).

2.

■ We also disagree with defendant's contention that the omission of the phrase "but did not include sexual assault or robbery" in the elemental instruction misstated the statutory elements and transformed mutually exclusive elements into consistent, mutually possible ones.

The second degree kidnapping statute in effect at the time of this offense read in part:

> (3)(b) Second degree kidnapping ... is a class 2 felony if the person kidnapped ... [i]s a victim of a robbery.
>
> (4) Second degree kidnapping is a class 3 felony if the kidnapping is accomplished by the use of a deadly weapon but did not include sexual assault or robbery.

Colo. Sess. Laws 1981, ch. 214, § 18–3–302 at 983.

In discussing a similar issue involving this statute, the supreme court has stated:

> Sexual assault kidnapping and deadly weapon kidnapping are not mutually exclusive. The phrase "use of a deadly weapon but did not include sexual assault or robbery" means that a second degree kidnapping that involves sexual assault is still a class 2 felony, and is not reduced to a class 3 felony, when the defendant uses a deadly weapon.

*People v. Harlan,* 8 P.3d 448, 503 (Colo.2000). By analogy here, robbery kidnapping and deadly weapon kidnapping are not mutually exclusive.

3.

We also reject defendant's contention that the omission of the elements of robbery necessary to enhance the second degree kidnapping in count one constitutes plain error.

Our holding in Part I above, that the instructions as a whole informed the jury it must find that the manager trainee was the victim of a robbery beyond a reasonable doubt, disposes of this issue.

4.

■ We also disagree with defendant's contention that the instructions failed to inform the jury that the mental state "knowingly" applied to all the elements of second degree kidnapping because the jury could have concluded that it applied only to the immediately following element.

■ The term "knowingly," when offset from other elements, modifies all succeeding conduct elements. *People v. Rodriguez, supra; see, e.g., People v. Freeman,* 668 P.2d 1371 (Colo.1983)(rejecting the defendant's claim that the failure to restate the term "knowingly" before each of the enumerated elements in the robbery instruction relieved the prosecution of its burden of proof with respect to those elements); *People v. Stephens,* 837 P.2d 231 (Colo.App.1992)(when "knowingly" preceded and was offset from the other elements and followed by a comma, it modified succeeding elements in list).

Here, the instruction stated in part that the defendant:

3. knowingly

4. seized and carried any person from one place to another,

5. without his consent, and

6. without lawful justification.

We conclude that "knowingly" thus applied to the succeeding conduct elements.

5.

■ We reject defendant's contention that the trial court's failure to instruct that "the crime was accomplished by means of a handgun" was plain error.

We disagree to the extent defendant states that the information was constructively amended because he was charged in counts one and two with committing second degree kidnapping with a "deadly weapon, to wit: Handgun," but the elemental jury instructions did not specify a handgun.

Another instruction defined "deadly weapon" as a "firearm" and further defined a "firearm" to include a "handgun." Also, the evidence that a handgun was used was over-

whelming and uncontroverted at trial. *See People v. Rodriguez, supra* (when the evidence does not present a reasonable likelihood that jurors may disagree on which acts the defendant committed, the prosecution need not designate a particular type of deadly weapon in sexual assault case); *see also Bogdanov v. People, supra* (failure to instruct properly is not plain error where the subject of the error is not contested at trial).

### B.

Defendant's contentions that the aggravated robbery instruction was plainly erroneous also fail.

### 1.

■■■ Defendant contends that the use of the element "knowingly" in the instruction created confusion for the jury because of the multiple possible interpretations of the instruction. He argues that (1) application of the offset rule here is arbitrary and capricious, and (2) the robbery instruction is distinguishable from the kidnapping instruction discussed above because it addresses alternative methods of committing aggravated robbery. We disagree.

The jury was instructed that the elements of aggravated robbery were that the defendant

3. knowingly,

4. took anything of value,

5. from the person or presence of [the manager trainee],

6. by the use of force, threats, or intimidation, and

7. during the act of robbery or the immediate flight therefrom,

8. was armed with a deadly weapon,

9. with intent, if resisted, to kill, maim, or wound the person robbed, or any other person.

 -OR-

8. knowingly,

9. put the person robbed, or any other person, in reasonable fear of death or bodily injury,

10. by the use of force, threats, or intimidation,

11. with a deadly weapon.

Defendant argues that *People v. Mascarenas,* 666 P.2d 101 (Colo.1983), and *People v. Bornman,* 953 P.2d 952 (Colo.App.1997), control here. However, in *Bornman,* the element "knowingly" was offset twice with another element between the two uses of "knowingly," creating confusion as to whether the mental state "knowingly" applied to the intervening element. Here, the two alternatives are clearly presented in the disjunctive with "OR" between them.

In *Mascarenas,* the element "knowingly" was inserted in the last element in the instruction, allowing the interpretation that it applied only to the last element. Unlike here, there were no following elements at issue.

Also, the instruction given here tracks the pattern instruction, CJI–Crim. 15:2 (1983). *See People v. Rester,* 36 P.3d 98 (Colo.App. 2001)(while pattern jury instructions are intended as guidelines, they carry weight and should be considered by a trial court); *People v. Laurson,* 15 P.3d 791 (Colo.App.2000)(affirming instruction that tracked language of statute and pattern jury instruction).

### 2.

■■■ Defendant asserts the instruction on the second alternative method of committing aggravated robbery is defective because it implies that defendant needed only to be armed with a deadly weapon, and need not have actually used the weapon to force, threaten, or intimidate the victim. We disagree.

A defendant commits aggravated robbery if the defendant "by the use of force, threats, or intimidation with a deadly weapon knowingly puts the person robbed or any other person in reasonable fear of death or bodily injury." Section 18–4–302(1)(b), C.R.S.2003.

Here, the instruction closely tracks the statutory language, although the element "knowingly" precedes the list of elements. In light of our holding above that "knowingly" applies to all subsequent elements, that slight change is of no consequence. *See Peo-*

*ple v. Young,* 758 P.2d 667, 669 (Colo.1988)(restating the elements in language identical to that used in the instruction given here).

We also disagree with defendant's argument that jurors would likely assume that "was armed with a deadly weapon" in the first alternative has the same meaning as "with a deadly weapon" in the second alternative.

The instructions state that the second alternative is satisfied only "by the *use* of force, threats, or intimidation, with a deadly weapon" (emphasis added). Also, the witness testimony provided overwhelming and uncontroverted evidence that defendant was not only armed with a deadly weapon, but used it to threaten and intimidate the victims. *See Bogdanov v. People, supra.*

### 3.

We reject defendant's contention that the trial court committed plain error by not requiring the jury to decide unanimously which of the alternative methods of committing aggravated robbery was proved.

To the extent defendant bases his assertion on the unanimity doctrine enunciated in *James v. People,* 727 P.2d 850 (Colo.1986), we reject his argument. The recently announced case of *People v. Dunaway,* 88 P.3d 619 (Colo.2004), expressly overruled *James* on this issue. *Dunaway* holds:

> [P]ermitting an instruction on an alternative theory of liability for the same charged offense not supported by sufficient evidence does not rise to the level of a constitutional error where the conviction for that offense is otherwise supported by sufficient proof....
>
> [W]here the evidence presented at trial against a criminal defendant is otherwise sufficient to support the determination of guilt, providing the jury with an instruction containing a factually insufficient theory of liability for the same charged offense does not alone violate the due process clause of the Colorado Constitution.

*People v. Dunaway, supra,* 88 P.3d at 631.

Relying on *James,* defendant here nevertheless asserts that one of the two alternatives is unconstitutional, not only because of insufficient evidence, but also because it failed to instruct the jury properly on the culpable mental state and the elements. Defendant argues that because it is impossible to determine upon which alternative the jury relied in reaching its general verdict, the aggravated robbery conviction must be vacated. However, because we have determined that the jury was properly instructed on the elements and the culpable mental state, we need not reach the issue of the continuing viability of *James* in this type of case.

### 4.

We disagree with defendant's contention that the omission of the "handgun" and "U.S. Currency" elements from the aggravated robbery instruction constituted a constructive amendment that denied defendant his due process rights.

Aggravated robbery requires a taking of "anything of value," *see* § 18–4–301, C.R.S. 2003, and the involvement of a deadly weapon. Section 18–4–302. The instruction here included those elements. The information charged the taking of a "thing of value, to-wit: United States Currency," and the involvement of a "deadly weapon, to-wit: Handgun." As discussed above, "deadly weapon" was defined to include a "handgun," and "thing of value" was defined to include "United States Currency."

Defendant relies on *People v. Chavez,* 952 P.2d 828 (Colo.App.1997). In *Chavez,* the defendant was charged with the theft of "money." The evidence showed only that she stole checks, not that she received money by negotiating the checks. Here, the evidence was overwhelming and uncontroverted that defendant took currency by using a handgun. Because no substantial variance existed between the information and the instructions, there was no constructive amendment. *See People v. Rodriguez, supra; People v. Foster,* 971 P.2d 1082 (Colo.App.1998).

### C.

Defendant presents four contentions that the theft instruction was erroneous. We conclude there was no plain error.

■ Because vague and unspecific objections to instructions will not be recognized on appeal, *People v. Vigil,* 718 P.2d 496 (Colo. 1986); *Cruz v. People,* 165 Colo. 495, 441 P.2d 22 (1968), we must determine whether the theft instruction here constituted plain error.

### 1.

■ Contrary to defendant's contention, the elemental theft instruction adequately instructed the jury that the mental state "knowingly" applied to all elements of the offense, specifically including the element that property was taken "without authorization."

The elemental theft instruction stated in part that defendant:

3. knowingly

 a. obtained or exercised control over

 b. anything of value

 c. which was the property of another person,

4. without authorization or by threat and deception,

5. with intent to permanently deprive the other person of the use of benefit of the thing of value.

The supreme court found the same instruction to be adequate in *People v. O'Neill,* 803 P.2d 164, 175 (Colo.1990): "A special instruction on 'knowingly' as applied to 'without authorization' is not required. *See People v. Gresham,* 647 P.2d 243, 244 (Colo.App.1981)." *Accord People v. Collie,* 682 P.2d 1208 (Colo. App.1983).

*People v. Price,* 969 P.2d 766, 768 (Colo. App.1998), upon which defendant relies, does not dictate a different result here. In *Price,* a division of this court held that a similar instruction was erroneous "because it could be interpreted to permit a conviction where the defendant mistakenly believed that she was authorized to take the money." *Price* did not address *O'Neill, Collie,* or *Gresham. Price* in turn relied on *People v. Bornman, supra,* which defendant also cites. As discussed above, here, however, element five is different from that in *Bornman.*

Moreover, the division in *Price* concluded that the error did not rise to the level of plain error because no theory of mistaken belief of authority was presented. Likewise, defendant here did not suggest that he was mistaken as to whether he was authorized to take money from Burger King.

### 2.

■ We also reject defendant's contention that the theft instruction was erroneous because it did not require the jury to agree unanimously as to a particular victim.

The information, which was read to the jury, specified that defendant was charged with theft from "East Mississippi Restaurant Corporation d/b/a Burger King." The instruction used the language, "the property of another person."

Defendant argues that the jury could have found the assistant manager, the manager trainee, or the crew member, in addition to Burger King, to have been the victim of the theft. However, the instruction correctly stated the statutory element, "anything of value of another." Section 18–4–401, C.R.S. 2003. Evidence was uncontested that the money was taken from the safe in the restaurant, and no personal property of any individual was taken.

Nor do we accept defendant's argument that the instruction was a constructive amendment. *See People v. Foster, supra* (no constructive amendment where instruction did not name an additional or different victim).

### 3.

■ We are not persuaded by defendant's contention that omission of the phrase "United States Currency" in the theft instruction denied him the right to a unanimous jury verdict.

The information charged the "unlawful taking of a thing of value, to-wit: United States Currency." The instruction required the taking "of anything of value."

The instruction correctly stated the language of the statute. *See* § 18–4–401. As discussed above, this wording does not constitute a constructive amendment.

**4.**

■ We disagree with defendant's contention that the inclusion of both the "without authorization" and "threat and deception" alternatives deprived him of a unanimous jury verdict.

A division of this court has rejected the same argument:

> The instruction was worded in the language of the statute, and our supreme court has held that there is no prejudice in instructing the jury of all sections of a theft statute, even though some sections did not apply to defendant.

*People v. Pack,* 797 P.2d 774, 777 (Colo.App. 1990) (citation omitted).

Although defendant argues that *Pack* predated *James v. People* and its requirement of unanimity, our discussion of *Dunaway* disposes of this argument.

**D.**

■ Additionally, defendant contends the trial court's instruction defining intentional conduct reduced the prosecution's burden of proof and denied his right to present exculpatory evidence on that issue. We disagree.

■ The General Assembly alone may define proscribed conduct and the culpable mental state that must accompany such conduct. *Palmer v. People,* 964 P.2d 524 (Colo. 1998).

Here, the instruction follows both the pattern jury instruction, CJI–Crim. 6:01 (1983), and § 18–1–501, C.R.S.2003. The supreme court has upheld similarly worded instructions. *See People v. Freeman, supra,* 668 P.2d at 1383.

Further, the record does not indicate that defendant was prevented from arguing that the fact that no one was shot tended to disprove that he had the intent to cause death or serious bodily injury with a deadly weapon.

**E.**

■ Defendant contends that certain instructions as to the manager trainee errone-

ously denied him his rights to due process and a trial by jury. We disagree.

■ Colorado courts have consistently upheld the giving of supplemental instructions, even when unnecessary, if those instructions properly state the law. *People v. Burke,* 937 P.2d 886 (Colo.App.1996).

Instruction no. 18 stated in part:

1. In order to commit a robbery against an individual who does not have physical possession of an article taken, that individual must be exercising, or have the right to exercise control over the article taken.

2. Property is within the presence of another when it is so within the victim's reach, inspection or observation that he or she would be able to retain control over the property but for the force, threats, or intimidation directed by the perpetrator against the victim.

According to defendant, even if the jury decided that the manager trainee did not exercise control of the money, the jury could decide that the money was within her presence and still find defendant guilty of aggravated robbery. We reject this argument.

Evidence was presented that the manager trainee was authorized to count money and handle deposits and that she was counting money before the robbery. She was in the freezer when the money was taken from the safe and cash drawers. Thus, it was appropriate to instruct the jury on the element "from the person or presence of ... [the manager trainee]" where the money was not on her person. Read together, the paragraphs of the instruction did not relieve the prosecution of the burden of showing the manager trainee had the right to exercise control of the money. *See People v. Benton,* 829 P.2d 451 (Colo.App.1991)(approving similar instruction).

Whether such right to exercise control of the money was proved is a separate question that we review below.

**F.**

■ Defendant contends that trial and appellate counsel rendered ineffective assis-

tance by failing to raise issues related to the jury instructions. We disagree.

In the Crim. P. 35(c) hearing, trial counsel testified that he carefully reviewed the jury instructions and that, had he felt they were inappropriate or an inaccurate statement of the law, he would have tendered his own instructions. Defendant's expert witnesses testified that counsel should have objected to many of the instructions. The court found that although "a more complete effort with respect to the jury instructions and verdict forms could have been made," any errors did not establish that counsel's representation was constitutionally ineffective.

The court also found that appellate counsel rendered ineffective assistance by not raising on appeal the erroneous verdict forms and interrogatories, but that resentencing on the two second degree kidnapping counts remedied this issue.

We have concluded that the verdict forms and interrogatories as to enhancement for second degree kidnapping were inadequate under Colorado law at the time of trial. However, in light of our conclusion that the enhancement factors were proved beyond a reasonable doubt or that they were not disputed, defendant has not shown a reasonable probability that the result of the trial would have been different had either trial or appellate counsel raised this issue. Thus, he has not established prejudice.

### X. Right of Defendant and Counsel to be Present at Trial

Defendant contends he was denied his constitutional right to be present at trial. We perceive no reversible error.

■■■■■ The defendant in a criminal case has a fundamental right under the Colorado Constitution to have counsel present when the court gives instructions to or responds to questions from the jury. *Key v. People*, 865 P.2d 822 (Colo.1994); *Leonardo v. People*, 728 P.2d 1252 (Colo.1986). Implicit within this right is the right of defense counsel to argue and make objections concerning possible responses to the jury's inquiries. It is constitutional error for the trial court to respond to an inquiry from a jury

without first making reasonable efforts to obtain the presence of the defendant's counsel. *Leonardo v. People, supra.*

■■■■■ In cases of trial error involving the right to counsel, reversal is required unless the appellate court can declare a belief that the error was harmless beyond a reasonable doubt. Under this standard, the prosecution has the burden of demonstrating that the trial error did not contribute to the defendant's conviction. *Key v. People, supra.* If there is a reasonable possibility that the defendant could have been prejudiced, the error cannot be harmless beyond a reasonable doubt. *Leonardo v. People, supra; see Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *People v. Dunlap, supra*, 975 P.2d 723. If the trial court properly responds to an inquiry from the jury, there is no prejudice to the defendant. *Leonardo v. People, supra.*

### A.

■■■■ Defendant contends the trial court's response to a jury request for witness testimony in the absence of defendant and his counsel violated his rights to counsel, to be present at trial, to a complete record, and to a fair trial. We agree in part, but conclude that any error was harmless beyond a reasonable doubt.

■■■■ A trial court's determination whether to allow the jury to review a transcript of trial testimony is a matter within the trial court's discretion. *People v. Jenkins*, 83 P.3d 1122 (Colo.App.2003); *Franklin v. People*, 734 P.2d 133 (Colo.App.1986); *see Settle v. People*, 180 Colo. 262, 504 P.2d 680 (1972)(no abuse of discretion to permit reading of testimony of complaining witness); *People v. Balkey*, 53 P.3d 788 (Colo.App. 2002)(no abuse of discretion in providing jury with written transcript of witness's direct and cross-examination).

Here, the record reflects that the jury retired to deliberate mid-day on November 2, 1995. Deliberations were recessed for the evening at 5:05 p.m. No other action was taken on the record until the next day at 4:10 p.m., when the trial court discussed with

counsel several communications with the jury.

The court received a "three-part" question from the jury after the evening recess. The record reflects that the court waited until morning to discuss the matter with counsel by phone and to reply to the jury. The record is not clear, however, as to whether the phone conference or the reply occurred first.

Here, defendant challenges the court's response to the jury's request for transcripts and other materials.

The jury asked for access to transcripts of interviews and testimony of three witnesses. The trial court replied in writing: "Ladies and gentlemen: You have received and have available all of the materials which you may properly consider to reach a verdict." This request and the court's reply were not discussed on the record, and nothing indicates when the request or the reply was made.

Defendant argues that neither he nor his counsel was allowed to review the jury request or provide input on the court's response. The People concede that "the record is curiously silent" as to whether defendant and counsel were consulted, but argue that the most reasonable inference is that the court simply forgot to make a record on this point.

We conclude that any error was harmless beyond a reasonable doubt.

Defendant argues that this testimony was "critical" and "central to the case," but does not show how he was prejudiced. *See Franklin v. People, supra* (affirming summary denial of jury's request for transcript of testimony where nothing in the record showed that the defendant's case was prejudiced).

As noted, defendant did not contend that the crimes did not occur, but rather, contended that he was not the perpetrator. While the testimony requested dealt in part with defendant's statements about taking credit for the robbery, other witnesses testified to defendant's identity.

Also, the request was for the entire lengthy testimony of three witnesses and was not limited to particular portions or issues. *See People v. Coit*, 961 P.2d 524 (Colo.App. 1997) (denial of transcripts not an abuse of discretion where the request was relatively broad, not focused on a particular aspect of the testimony, and reading back the testimony would have been time consuming).

Defendant further argues that the jury was deadlocked at the conclusion of the first day's deliberations and provision of the testimony would have helped resolve the deadlock. However, in partial response to another question that indicated some deadlock, the court asked that the jurors, having had a period of rest, please resume their deliberations. This response was approved by counsel. We note that the jury reached its verdict the same day other questions were answered, and the jury asked no further questions.

### B.

 Nor did the trial court's allegedly inadequate and improper responses to jury questions in defendant's absence deny him his rights to a fair trial and to a fair and impartial jury.

 When a defendant actively participates in the preparation of a response to the jury, or expressly agrees to it, he or she is prevented from asserting error with respect to that response. *People v. Hendrickson*, 45 P.3d 786 (Colo.App.2001); *People v. Bielecki*, 964 P.2d 598 (Colo.App.1998). Failure to object to a clarifying instruction, combined with active participation in the response, waives any right to assert error on appeal unless the response is so "patently wrong" as to constitute a "misstatement of the law." *Boothe v. People*, 814 P.2d 372, 378 (Colo.1991)(Lohr, J., concurring); *see Valley v. People*, 165 Colo. 555, 561, 441 P.2d 14, 16 (1968).

Here, as discussed above, the jury sent out a three-part question, which the court discussed with the prosecution and defense counsel by phone the next morning. The jury stated: "The jury is at an impasse, with no movement from individuals' positions [occurring] over the past 2 hours." The jury asked (1) "what constitutes evidence," (2)

"what is required to achieve 'reasonable doubt,'" and (3) "what is the proper approach to try to resolve the [impasse]." In its response the next day, the court called the jurors' attention to particular instructions they had been given and stated, "Having had a period of rest, please resume your deliberations." Defense counsel stated on the record that he had approved the answers.

Defendant now argues that the court's response to the question of what constitutes evidence was inadequate, he does not argue that it was wrong. We conclude the court's response was proper. *See Boothe v. People, supra; People v. Mascarenas,* 972 P.2d 717 (Colo.App.1998)(reference back to original instructions answered jury's request for clarification). *But cf. Leonardo v. People, supra* (reference back to instruction inadequate where jury indicates fundamental misunderstanding of instruction).

Defendant nonetheless argues that the inquiry about the requirement to "achieve" reasonable doubt indicates the jurors believed that he had a burden of proof to establish reasonable doubt. However, the instruction to which the trial court referred places the burden of proof on the People and properly defines "reasonable doubt." Thus, the jury's question concerning the burden of proof was correctly resolved.

Finally, we do not agree with defendant that the response to a single inquiry as to how to break an impasse was a coercive reply. *See People v. Grace,* 55 P.3d 165 (Colo.App.2001)(response that jury should continue to deliberate appropriate where counsel agreed with trial court on response, although the defendant was absent).

In light of the above, we also reject defendant's contention that he was denied effective assistance to the extent counsel approved the responses rather than objecting to them and persuading the trial court to adopt different responses.

### C.

Defendant contends the trial court's individual voir dire of prospective jurors outside the presence of the general public, and with only a single press representa-

tive present, denied him his rights to a public trial and to be present during trial. He also contends his right to be present at trial was violated by his absence during a portion of the voir dire proceedings. We disagree.

The accused in a criminal case has the right to a public trial. U.S. Const. amend. VI; Colo. Const. art. II, §§ 16, 25; *Anderson v. People,* 176 Colo. 224, 490 P.2d 47 (1971). However, this right may be waived. *See Patton v. People,* 35 P.3d 124 (Colo.2001)(guilty plea); *Anderson v. People, supra* (right to a public trial may be subordinated to the higher right and duty of the court to insure that the defendant receives a fair trial).

An accused has the right to be present at all critical stages of a criminal trial. *People v. Grace, supra.*

A party may not complain on appeal of an error that he or she has invited or injected into the case; the party must abide the consequences of such acts. An allegation of constitutional error does not require us to abandon the strict preclusion of review of invited error. *People v. Zapata,* 779 P.2d 1307 (Colo.1989); *see People v. Stewart, supra.*

#### 1.

We disagree with defendant's assertion that the closed individual voir dire sessions and the exclusion of all but one media representative denied him the right to a public trial and constituted structural error requiring reversal per se.

Structural errors affect the framework within which the trial proceeds and are not amenable to either a harmless error or a plain error analysis. *Griego v. People, supra.* Structural errors affect the entire conduct of the trial or deny the defendant a basic protection and include trial before a biased judge, denial of the right to self-representation at trial, deprivation of the right to counsel, and violation of the right to public trial. *People v. Phillips,* 91 P.3d 476 (Colo.App.2004).

An accused's right to insist upon a public trial extends to the voir dire proceeding in which the jury is selected. The right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information. *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)(closure of suppression hearing).

Here, the suggestion to have individual voir dire on pretrial publicity was a strategic decision made by defense counsel in a pretrial motion. Defendant was advised fully on the media procedure for voir dire and did not object. In fact, defendant objected initially to any media presence during individual voir dire before agreeing to the lone media representative.

By agreeing to the procedures adopted for voir dire, defendant waived the right to object to them. Under these circumstances, defendant was not denied his right to a public trial. As a matter of trial strategy to ensure a fair trial, he waived this right. *See Anderson v. People, supra* (right to object to exclusion of public from courtroom during selection of jury was waived); *see also United States v. Gallego,* 191 F.3d 156 (2d Cir. 1999), *abrogated on other grounds by Crawford v. Washington, supra.*

We also disagree with defendant that *Waller v. Georgia, supra,* requires a different result. *Waller* imposes certain requirements for the closure of a public hearing over the objection of the defendant, but holds that the right to a public trial may give way to other rights or interests.

Defendant presents no facts that would indicate neglect or inadvertence by his counsel, and he has waived the right to challenge these strategic decisions on appeal.

### 2.

We also reject defendant's assertion that his constitutional right to be present at trial was violated because he did not attend the initial jury orientation session. That session was conducted in accordance with defense counsel's recommendation and without objection by defendant. Even if we assume that the general orientation session was a critical stage of the proceeding, *see Cohen v. Senkowski,* 290 F.3d 485 (2d Cir.2002)(holding that pre-screening of jurors is critical stage), we conclude that any such right was waived here.

Here, defendant was concerned about the effects of pretrial publicity on his trial and was present at a pretrial hearing held to address jury selection procedures. Defense counsel suggested a procedure for the initial jury orientation where the trial judge would meet with the members of the jury pool without his robe. Counsel agreed with the court's suggestion that counsel could observe from a side room. The court formalized this procedure in a written order.

The court later addressed the jury pool after the standard orientation by the jury commissioner and conducted additional orientation in accordance with the order. That afternoon, with defendant present, the court reviewed the morning session so that defendant was "fully informed." Defendant did not object to the morning session's having been conducted in his absence. By acquiescing in the procedure suggested by his counsel for the initial jury orientation, defendant impliedly waived any right to be present. *See Cohen v. Senkowski, supra* (finding implied waiver of defendant's right to be present at pre-screening of jurors by acquiescence of defendant and his counsel).

### XI. Sufficiency of the Evidence

Defendant contends that the evidence was insufficient to support his convictions. We disagree.

Where the sufficiency of the evidence is challenged on appeal, our task is to determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt. *Kogan v. People,* 756 P.2d 945 (Colo.1988); *see Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *People v. Gonzales,* 666 P.2d 123 (Colo.1983).

## A.

We reject defendant's assertion that the evidence was insufficient to prove an alternative basis—threats or deception—for conviction of theft. As discussed above, the inclusion of the alternative was not error, and *People v. Dunaway, supra,* negates defendant's unanimity argument.

## B.

■■■ Further, the evidence was sufficient to support the asportation element of second degree kidnapping. We reject defendant's argument that any movement was incidental and did not increase the existing risk of harm.

Asportation is the statutory element of second degree kidnapping that the perpetrator "seizes and carries any person from one place to another." Section 18–3–302, C.R.S. 2003.

To the extent defendant argues that asportation requires an increase in the risk of harm, and that *People v. Harlan, supra,* cannot retroactively eliminate that requirement, we reject his argument. *Harlan* did not announce a new rule:

> We have consistently held that the asportation element of second degree kidnapping is that the defendant moved the victim from one place to another. In no prior decision have we said that asportation must include substantially increasing a risk of harm to the victim, and we decline to do so in this case.

*People v. Harlan, supra,* 8 P.3d at 476–77 (citations omitted).

The supreme court also stated that when it is not clear whether the defendant moved the victim from one place to another, "[e]vidence that the defendant's actions substantially increased a risk of harm to the victim may be relevant to whether asportation was proved in some cases, but creating such a risk is not an essential element of the offense." *People v. Harlan, supra,* 8 P.3d at 477–78.

The evidence here is unlike that in *People v. Bell,* 809 P.2d 1026 (Colo.App.1990), cited by defendant. There, the victim's movement at gunpoint from one room to another in his own house not only failed to increase his risk of harm, but also was insubstantial. The detention was brief, the victim was not held at gunpoint in the second room, he was not deprived of escape routes, and he was left alone to call police.

Here, the evidence showed that the manager trainee was moved at gunpoint from the restroom to the kitchen, where both she and the crew member were forced to lie on the floor. The perpetrator then moved them both into a freezer with no telephone, no windows, and no escape route. This evidence was sufficient for a jury to find a substantial increase in the risk of the victims' harm. *See People v. Huggins, supra* (substantial increase in risk of harm where defendant moved victim ten steps to a small, secluded bathroom with no telephone or accessible window).

## C.

■■■ We disagree with defendant's contention that there was insufficient evidence that anything of value was in the manager trainee's presence because she did not have the right to exercise control over the restaurant's money.

■■■ To take property from an individual's presence, that individual must be exercising, or have the right to exercise, control over the article taken. *People v. Benton, supra.*

Here, defendant points to the manager trainee's testimony that she handled the money when the assistant manager directed her to do so and the assistant manager's testimony that he was in charge of the shift. However, the restaurant manager testified that on the night of the robbery, the manager trainee was in her last day as a manager trainee and exercised the full responsibilities of an assistant manager. The manager trainee had the safe combination, was authorized to count money and handle deposits, and was counting money just before the robbery occurred.

Defendant's reliance on *People v. Ridenour,* 878 P.2d 23 (Colo.App.1994), is misplaced. In *Ridenour,* the evidence of robbery was insufficient where the alleged

victim, a theater ticket taker, was not authorized to handle money or to access the safe from which the money was taken.

XII. *Apprendi* Sentencing Issues

 Defendant contends that the aggravated robbery conviction must merge into the second degree kidnapping conviction. We disagree.

 Merger applies only to a crime that is the lesser included offense of another crime for which the defendant has also been convicted in the same prosecution. Offenses are not included if each offense requires proof of a fact that the other does not. *People v. Henderson,* 810 P.2d 1058 (Colo.1991).

Defendant nevertheless argues that *Henderson* cannot survive *Apprendi v. New Jersey, supra.* We disagree.

Defendant recognizes that the division in *People v. Martinez,* 32 P.3d 520, 530 (Colo. App.2001), took a position contrary to his, but disagrees with its holding:

> [I]t is uncertain whether *Apprendi* compels the conclusion that any such fact that may increase the maximum penalty *ipso facto* becomes an essential element of that offense. Given this uncertainty, we conclude that [*Henderson* ] remains dispositive of the merger issue before us.

It is not necessary to prove aggravated robbery to prove second degree kidnapping, nor is it necessary to prove that the victim was seized and carried to prove aggravated robbery. Because the jury found defendant guilty of both second degree kidnapping and aggravated robbery beyond a reasonable doubt, we conclude that the convictions do not merge.

In view of our determination that defendant's original sentence stands, we do not reach his contention that his resentencing beyond the maximum presumptive range violated the holding of *Apprendi.*

 However, after this appeal was submitted, defendant moved for a limited remand for the trial court to reconsider his sentence in light of *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), which holds that a defendant's exceptional sentence violates the Sixth Amendment right to trial by jury when the facts supporting it are neither admitted by the defendant nor found by a jury.

Defendant's original sentence was entered in January 1996, and the mandate in defendant's direct appeal issued in October 1998.

*Blakely* applies the rule of *Apprendi. Blakely v. Washington, supra,* 542 U.S. at 301, 124 S.Ct. at 2536. We have concluded that *Apprendi* does not apply retroactively to collateral attacks on judgments that were already final when *Apprendi* was announced, and we now conclude that *Blakely* should be similarly applied. *See Schriro v. Summerlin,* 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004); *In re Dean,* 375 F.3d 1287 (11th Cir.2004)(Supreme Court in *Schriro* strongly implies *Blakely* not retroactive); *Garcia v. United States,* 2004 WL 1752588 (N.D.N.Y. No. 04–CV–0465, Aug. 4, 2004); *People v. Hall,* 87 P.3d 210 (Colo.App.2003).

Therefore, a remand for reconsideration of the sentence is unnecessary.

Accordingly, the order is reversed to the extent it reduces the felony level and sentences for the two second degree kidnapping counts, and the case is remanded for correction of the mittimus to reinstate defendant's original conviction and sentence on those counts. The remainder of the order is affirmed.

Judge KAPELKE and Judge PICCONE concur.