FILED
United States Court of Appeals
Tenth Circuit

November 22, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

NATHAN DUNLAP,

      Petitioner - Appellant,

v.

TOM CLEMENTS, Executive
Director, Colorado Department of
Corrections,

      Respondent - Appellee.

No. 10-1422
(D.C. No. 06-cv-00611-JLK)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **MURPHY**, and **HARTZ**, Circuit Judges.

In 1995, Petitioner-Appellant Nathan Dunlap was convicted of two counts

of second-degree kidnapping, aggravated robbery, and theft relating to a 1993

armed robbery at a Burger King restaurant. He was sentenced to 75 years

imprisonment. This conviction was later used as a statutory aggravator in the

penalty phase of Mr. Dunlap's trial involving the murders of four people at a

Chuck E. Cheese restaurant. See Dunlap v. Zavaras, No. 08-cv-0256, 2010 WL

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

3341533 (D. Colo. Aug. 24, 2010), appeal pending, No. 10-1424 (10th Cir. docketed Sept. 14, 2010). The district court denied Mr. Dunlap's habeas petition in connection with the Burger King armed robbery. 28 U.S.C. § 2254; Dunlap v. Zavaras, No. 06-cv-611-JLK, 2010 WL 3328508 (D. Colo. Aug. 24, 2010). Both parties recognize that this appeal turns on the deference paid the state courts' resolution of the issues. 28 U.S.C. § 2254(d).

On appeal, Mr. Dunlap argues that the state court erred in (1) rejecting his motion for a change of venue because the pretrial publicity about the Chuck E. Cheese case presumptively or actually prejudiced his ability to obtain a fair trial, and (2) rejecting his claim that the prosecution's closing argument constituted improper vouching which rendered his trial fundamentally unfair. Aplt. Br. 3. Concerning the first issue, although our order granting a certificate of appealability ("COA") can be read to encompass only a pretrial publicity claim based upon actual prejudice, it is not entirely clear. Therefore, in an abundance of caution, we read it as encompassing both a presumptive and actual prejudice claim. 28 U.S.C. § 2253(c); Dunlap v. Clements, No. 10-1422 (10th Cir. Jan. 25, 2011) (case management order). Our jurisdiction arises under 28 U.S.C. §§ 1291 and 2253(a). After carefully considering the arguments, we affirm.

The parties are familiar with the facts and procedural history of this case so we need not restate either here. See Dunlap v. Zavaras, 2010 WL 3328508, at *1. On direct appeal, the Colorado Court of Appeals rejected Mr. Dunlap's claim that

the trial court erred by denying his motion to change venue because of prejudicial pre-trial publicity and the Colorado Supreme Court denied certiorari. People v. Dunlap, No. 95CR605, (Colo. App. Feb. 5, 1998); 2 (pt. 1) R. 152-58, cert. denied, No. 98SC221 (Colo. Oct. 19, 1998); 2 (pt. 1) R. 180. On post-conviction appeal, the Colorado Court of Appeals also rejected the claim that the prosecution improperly vouched for the prosecution witnesses, deciding that the prosecution's characterization of the investigators as experienced and professional was a permissible inference concerning witness credibility based on the evidence. People v. Dunlap, 124 P.3d 780, 809-810 (Colo. App. 2004). The Colorado Court of Appeals also decided that the prosecutor's statements that investigators tell the truth and know when someone is lying to them did not constitute plain error given the relevance of how the witness testimony was procured and the defense theory of improper pressure on the witness. Id.

Our review of the district court's decision is de novo. Welch v. Workman, 639 F.3d 980, 991 (10th Cir. 2011). Like the district court, we must defer to the state court proceedings on these claims unless they "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). Section 2254(d) contains difficult standards to satisfy—a defendant must show that a state court's ruling is "so

- 3 -

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011).

Factual findings made by state courts are presumed correct unless the presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The more general the rule applied by state courts, the greater range of outcomes that are permissible given differing facts. Renico v. Lett, 130 S. Ct. 1855, 1864 (2010).

Our review of the record persuades us that the state courts' resolution of Mr. Dunlap's claims was not "diametrically different" or "mutually opposed" to Supreme Court precedent. See 28 U.S.C. § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000). Nor did the Colorado courts apply the Supreme Court's rules to materially indistinguishable facts and reach a different result. Id. Finally, no unreasonable determination of the facts pertinent to each claim occurred. 28 U.S.C. § 2254(d)(2).

## I. Pretrial Publicity

Mr. Dunlap claims that the Colorado Court of Appeals unreasonably concluded that pretrial publicity about the Chuck E. Cheese murder case neither presumptively nor actually prejudiced his right to a fair trial in the Burger King case. Aplt. Br. 13-50. A defendant may establish prejudice by showing either (1)

pretrial publicity was so pervasive and prejudicial that it created a presumption of an unfair trial (presumptive prejudice), see Sheppard v. Maxwell, 384 U.S. 333 (1966), or (2) pretrial publicity actually prejudiced the empaneled jury against the defendant (actual prejudice), see Irvin v. Dowd, 366 U.S. 717 (1961).

A.    Presumptive Prejudice

Mr. Dunlap argues that the media coverage of the Chuck E. Cheese murders in the locale of the Burger King trial presumptively prejudiced the jury pool against him, violating his right to a fair trial. Aplt. Br. 35-44. He maintains that the Colorado Court of Appeals unreasonably rejected this claim when it found that most of the publicity pertained to the Chuck E. Cheese case and no opinion poll had been conducted relating to the Burger King case. The district court held that the Colorado Court of Appeals had considered all of the publicity in the record and that neither the pretrial publicity relied upon by Mr. Dunlap nor the polling data suggested an unreasonable application of federal law by the state court. Dunlap v. Zavaras, 2010 WL 3328508, at *5.

In Skilling v. United States, the Supreme Court explained that "[a] presumption of prejudice . . . attends only the extreme case." 130 S. Ct. 2896, 2915 (2010). These extreme cases include the televised broadcast of a defendant's taped confession to a bank robbery and murder in a small Louisiana town, see Rideau v. Louisiana, 373 U.S. 723 (1963), excessive exposure during preliminary court proceedings that "bombarded . . . the community with sights

- 5 -

and sounds" of the pretrial hearing while media overran the courtroom, see Estes v. Texas, 381 U.S. 532 (1965), and a case in which the media created a pervasive "carnival atmosphere" in the courthouse during the trial of a man accused of bludgeoning his pregnant wife to death, see Sheppard, 384 U.S. at 358. At the same time, the Court has recognized that given the free flow of information in the media, jurors may glean information about a defendant. Thus, in Murphy v. Florida, the Court found that Estes and Sheppard "cannot be made to stand for the proposition that juror exposure to information about a state defendant's prior convictions . . . presumptively deprives the defendant of due process." 421 U.S. 794, 799 (1975); see also Stafford v. Saffle, 34 F.3d 1557, 1566 (10th Cir. 1994) ("There is nothing in the record to suggest that this publicity was anything other than factual reporting. There is no suggestion of a circus atmosphere or lynch mob mentality, or that a suppressed confession was broadcasted, or of any other community-wide rush to judgment that infected other trials that have been set aside for lack of an impartial jury.").

While we agree with Mr. Dunlap that the offending publicity may extend beyond the specific crime for which the defendant is on trial, we cannot agree that the factors suggested in Skilling for analyzing presumptive prejudice must all be applied here.[1] Aplt. Br. 40. The relevant inquiry is whether the state court

---

[1] In Skilling, the court pointed to four factors that courts have traditionally considered when making a determination of presumptive prejudice. 130 S. Ct. at 2915-16. These factors include the size and characteristics of the community

applied the relevant Supreme Court precedent at the time of its decision. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Moreover, allowing the introduction of new evidence before the federal habeas court is inconsistent with the principle that our review is on the state court record. See Cullen v. Pinholster, 131 S. Ct. 1388, 1399 (2011).

Having reviewed the media coverage, we agree with the district court that the state court's decision was not an unreasonable application of clearly established federal law. See Dunlap v. Zavaras, 2010 WL 3328508, at *5. More than "knowledge in the community of either the crimes or the putative criminal" is necessary to establish presumptive prejudice. See Dobbert v. Florida, 432 U.S. 282, 303 (1977). The coverage here is a mixed bag. Certain newspaper articles reported on earlier plea negotiations (an offer to plead guilty in the Chuck E. Cheese case for a life sentence), on an alleged confession, and on a threat to a witness. But the bulk of the coverage was objective and descriptive—some critical of the prosecution—rather than inflammatory. In fact, "[i]n order for the reviewing court to reach a presumption that inflammatory pretrial publicity so permeated the community as to render impossible the seating of an impartial jury, the court must find that the publicity in essence displaced the judicial process . . . ." See United States v. McVeigh, 153 F.3d 1166, 1181 (10th Cir. 1998). The

where the crime occurred, the nature of the publicity surrounding the case, the elapsed time between the crime and the trial, and outcome of the case. Id.

- 7 -

Colorado Court of Appeals certainly could come to the reasonable conclusion that such a displacement was lacking here.

B.     Actual Prejudice

Mr. Dunlap also argues that the Colorado Court of Appeals unreasonably rejected his claim of actual prejudice by relying mainly on the empaneled jury's assurances that they had no opinion about his guilt in either case. Aplt. Br. 13-14; 44-50.  The Colorado Court of Appeals considered Mr. Dunlap's statistics indicating that 92% of the 104 prospective jurors were familiar with him from media coverage, 41% expressed an opinion that he was guilty of the Chuck E. Cheese homicide, and 14% felt he was guilty of the robbery in this case.  Dunlap v. Zavaras, 2010 WL 3328508, at *5, n.5.  Mr. Dunlap relies upon the fact that two of the jurors were aware that the prosecution planned for the Burger King case be tried first.  Aplt. Reply Br. at 17.  He argues that his case is analogous to the one case in which the Supreme Court found actual prejudice: Irvin v. Dowd. 366 U.S. 717 (1961).  The district court determined that the Colorado Court of Appeals's resolution of this issue, focusing upon the careful procedures employed to ensure an impartial jury and actual juror responses, conformed with federal law.  Dunlap v. Zavaras, 2010 WL 3328508, at *6.

In Irvin, almost 90% of 370 prospective jurors expressed an opinion that the accused was guilty of the murders charged—a "pattern of deep and bitter prejudice" in the community.  Id. at 727.  Further, eight of the twelve empaneled

jurors thought that the petitioner was guilty. <u>Id.</u> In a different case, however, the Court did not infer actual prejudice where pretrial publicity revealed the defendant's prior confession for murder and conviction, 77% of prospective jurors had a preconceived opinion about the defendant's guilt, and eight out of fourteen empaneled jurors and alternates had at one time formed an opinion about defendant's guilt but indicated that they could set it aside. <u>See</u> <u>Patton v. Yount</u>, 467 U.S. 1025, 1029 (1984); <u>see</u> <u>also</u> <u>Gardner v. Galetka</u>, 568 F.3d 862 (10th Cir. 2009) (holding that there was no actual prejudice although 55% of prospective jurors had formed an opinion about guilt, and four of the twelve empaneled indicated that they thought defendant was guilty but could decide the case on the evidence alone).

In Mr. Dunlap's case, extreme precaution was taken to avoid juror prejudice. <u>See</u> <u>Dunlap v. Zavaras</u>, 2010 WL 3328508, at *5. The judge conducted *in camera* voir dire and dismissed potential jurors for significant exposure to pretrial publicity, admissions that they could not be impartial, or expressed opinions as to guilt. <u>Id.</u> Of the jurors that were eventually empaneled, though some had heard of Mr. Dunlap and the Chuck E. Cheese murders, none expressed an opinion about Mr. Dunlap's guilt in either the Burger King or Chuck E. Cheese cases, and all assured the judge of their ability to be impartial. <u>Id.</u> As the court stated in <u>Irvin</u>,

It is not required . . . that the jurors be totally ignorant of the facts and

issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

Irvin, 366 U.S. at 722. The Colorado Court of Appeals's apparent conclusion that the jurors here were able to "lay aside" their impressions and render a verdict based on the evidence is not contrary to federal law. That court correctly focused on the empaneled jury and the careful procedures employed by the trial judge to ensure an impartial jury.

## II. Improper Vouching

Mr. Dunlap contends that the Colorado Court of Appeals unreasonably rejected his improper vouching claim when it found the prosecutor's remarks to be fair comments on the evidence and on the defense's theory. Mr. Dunlap argues that the prosecutor's comments deprived him of due process because they resulted in a fundamentally unfair trial. See Darden v. Wainwright, 477 U.S. 168, 181-82 (1986). As evidence of improper vouching, he points to statements during closing argument that an investigator, detective, and prosecutor were "professional," "ethical," "kn[ew] when someone is lying," and would not break the law merely

to obtain a conviction. Mr. Dunlap concedes, as he must, that the prosecution was entitled to rebut his theory that key prosecution witnesses were lying because the witnesses had been pressured by law enforcement into implicating him. Aplt. Reply Br. 19. He claims, however, that the rebuttal here was not supported by the evidence. Id.

The district court concluded that the actions complained of did not constitute vouching, and that the Colorado Court of Appeals decision was not contrary to, or an unreasonable application of, federal law. Dunlap v. Zavaras, 2010 WL 3328508, at *9. Vouching poses the danger that the jury may decide the case based upon the government's judgment, rather than on an independent consideration of the evidence. See United States v. Young, 470 U.S. 1, 18-19 (1985). Courts often distinguish between reasonable responses to defense theories and comments and improper argument. Id. at 12; see also Bass v. United States, 655 F.3d 758, 761 (8th Cir. 2011) (differentiating vouching from affirming witness credibility). Here, there was adequate foundation for the prosecutor's statements. See XLV R.P. at 16 (22 years of experience); at 126 (21 years of experience); XLIV R.P. at 59-68 (witness preparation); XLVI R.P. at 37-44 (investigative processes and why a story might change); XLV R.P. at 27 (officer had information that conflicted with the witness's account). In any event, the jury was instructed by counsel and the judge not to consider arguments made by counsel as evidence and to decide the case on the evidence. XLVI R.P. at 26; I

- 11 -

R.P. at 350, Jury Instruction No. 6. Therefore, the Colorado Court of Appeals's resolution of this issue is not inconsistent with federal law.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge